**Norman E. EDWARDS and Bobby Wayne Mize, Plaintiffs-Appellants,**

v.

**SEA–LAND SERVICE, INC., et al., Defendants-Appellees.**

**No. 81–2283.**

United States Court of Appeals, Fifth Circuit.

June 24, 1982.

Rehearing and Rehearing En Banc Denied Aug. 25, 1982.

(5th Cir. 1972).

1278

Walter Jefferson, Steven L. Weathered, Houston, Tex., for plaintiffs-appellants.

Fulbright & Jaworski, A. Martin Wickliff, Jr., Robert J. Attaway, Barlow & Attaway, Princeton, N. J., for Sealand Service.

Hicks, Gillespie, James & Agee, James L. Hicks, Jr., for Intern. Broth. of Teamsters, et al.

Before THORNBERRY, REAVLEY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Plaintiffs-Appellants Norman E. Edwards and Bobby Wayne Mize (hereinafter collectively "Plaintiffs") appeal the decision of the district court dismissing their suit for breach of a collective bargaining agreement by Defendant-Appellee Sea-Land Service, Inc. ("Sea-Land") and breach of duty of fair representation by Defendant-Appellee International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local No. 988 (the "Union"). The district court held that Plaintiffs' claims were barred by the Texas and federal statutes of limitations. We reverse the district court as to the applicable statutes of limitations

and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

The facts necessary to a determination of the statute of limitations questions before us may be summarized very briefly.

On December 27, 1978, after several years of employment by Sea-Land, both Mize and Edwards received layoff notices pursuant to the terms of the collective bargaining agreement in effect between Sea-Land and the Union. On January 2, 1979, Mize and Edwards filed contractual grievance reports protesting their layoff. On January 15, 1979, Sea-Land amended the reasons for its layoff notice. On April 1, 1980, Mize and Edwards received notice that, pursuant to the collective bargaining agreement, their claims had been submitted to arbitration and furthermore, that they had been denied. On April 21, 1981, Mize and Edwards filed suit in the district court pursuant to § 301 of the Labor Management Relations Act[1] (LMRA), 29 U.S.C. § 185, alleging that Sea-Land violated the collective bargaining agreement by laying off and ultimately dismissing them and that the Union violated its duty of "fair representation" by its manner of representing them in the contractual arbitration procedure. They also alleged that they were not reinstated because of age discrimination. Jurisdiction was predicated on 28 U.S.C. § 1337.

The district court dismissed Plaintiffs' claims against Sea-Land and the Union upon its conclusion that the ninety-day period of limitation under the Texas General

1. Section 301 states:
  (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
  (b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any

employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and on behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.
29 U.S.C. § 185.

Arbitration Act,[2] Tex.Rev.Civ.Stat.Ann. art. 237(B) (Vernon 1979), or the three-month period under the Federal Arbitration Act, 9 U.S.C. § 12,[3] barred Plaintiffs' claims.

The district court reasoned that the recent United States Supreme Court decision of *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), indicated that this action was in the nature of an action to vacate an arbitration award and mandated that the Texas ninety-day limitation on applications to vacate arbitration awards was the most appropriate statute of limitations as to both the claim of breach of the collective bargaining agreement and the claim of breach of the duty of fair representation. The court held that an exclusion in the Texas General Arbitration Act which specifically removed from the coverage of the act arbitration agreements resulting from "any collective bargaining agreement between an employer and a labor union," Tex.Rev.Civ. Stat.Ann. art. 224(a) (Vernon 1979), did not preclude applicability of the ninety-day limitation as "an action to vacate an arbitration award pursuant to § 301 [29 U.S.C. § 185] is not such an action in a collective bargaining agreement as would bring the statutory bar into play." The court relied on language from *Mitchell* that "the unfair representation claim . . . is more a creature of 'labor law' as it has developed since the enactment of § 301 than it is of general contract law." *United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 63, 101 S.Ct. at 1564.

The district court further held that the three month limitation of the Federal Arbitration Act barred the action.

[T]he case at bar is brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185—it follows that the Court should incline towards the application of federal law: "the dimensions of

§ 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the [federal] statute." *Id.* [*Matter of Communication Workers of America v. Pacific Telephone and Telegraph Co.*, 462 F.Supp. 736] at 738. Although the Federal Arbitration Act technically exempts contracts of employment from its coverage, 9 U.S.C. § 1, "it has been held that judicial decisions making arbitration clauses specifically enforceable, have the effect of making labor contracts governed by the [Federal Arbitration Act]." *Gas Workers Local No. 80 v. Mich. Consolidated Gas*, 503 F.Supp. 155, 157 (E.D. Mich.1980); *Keystone Metal Molding, Etc. v. R. & W. Metals*, 486 F.Supp. 813 (D.Mont.1980). Moreover, in the case at bar Texas law need not apply since this action, by Plaintiffs' own admission, involves interstate commerce. Plaintiffs' Original Complaint, Paragraphs 2 and 4. See, *Miller v. Puritan Fashions Corporation*, 516 S.W.2d 234, 238 (Tex.Civ.App.— Waco 1974, writ ref'd n.r.e.). Since this case indisputably involves interstate commerce, there is no question that this Court may do what was suggested in the dissent in *Hoosier Cardinal, supra* [383 U.S.] at 709, [86 S.Ct. at 1115] and "fashion a uniform rule after consideration of the relevant federal and state statutes." *Keystone Metal, supra* at 813. In such a case the three-month limitation period expressed in 9 U.S.C. § 12 would clearly be applicable.

. . . .

In light of the foregoing, it is clear that *either* the federal three-month or state 90-day statute of limitations on actions to vacate an arbitration award is applicable.

---

2. The statute provides:
    Sec. B. An application under this Article shall be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety days after such grounds are known or should have been known.

Tex.Rev.Civ.Stat.Ann. art. 237(B) (Vernon 1979).

3. The Federal Arbitration Act states:
    Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. 9 U.S.C. § 12.

Mize and Edwards appeal, claiming that although a Texas (rather than federal) statute of limitations is to be applied, citing *International Union, United Automobile Aerospace & Agricultural Implement Workers of America (UAW), AFL–CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the ninety-day limitation found in the Texas Arbitration Act is not applicable because of the collective bargaining exclusion; rather the four year limitation as to contracts is applicable.[4] In the alternative, Mize and Edwards claim that if the ninety-day limitation is to be applied, it should not be applied retroactively to bar their suit brought prior to the Court's decision in *Mitchell.*

Sea-Land and the Union defend, claiming that the Texas ninety-day limitation applies despite the collective bargaining exclusion. In the alternative, according to Sea-Land and the Union, if the Texas Act does not apply, either the three month limitation of the Federal Arbitration Act, or the six month limitation of the National Labor Relations Act[5] (NLRA), 29 U.S.C. § 160(b), applicable to unfair labor practices, applies. Moreover, the applicable statute of limitations should be applied retroactively to bar the Plaintiffs' action.

The Union also alleges that this appeal should be dismissed because it was not timely brought.

*II. Timeliness of Appeal*

On May 4, 1981, Sea-Land moved to dismiss Plaintiffs' complaint, alleging it was barred by the statute of limitations. On June 22, 1981, the district court granted Sea-Land's motion stating that "[i]n light of

the disposition made herein, the other points raised by Defendant need not be addressed." On July 2, 1981, the Union moved to dismiss the complaint. On July 22, 1981, the Plaintiffs filed notice of appeal from the court's dismissal order of June 22, 1981 as to Sea-Land. On July 24, 1981, the district court granted the Union's motion to dismiss. On August 14, 1981, the Plaintiffs filed a notice of appeal from the court's dismissal of the action against the Union. On August 31, 1981, the district court rendered judgment on the action, ordering that the action be dismissed on the merits and that Plaintiffs be assessed costs.

The Union moved this court to dismiss the appeals claiming that Plaintiffs appealed before "final judgment" within the meaning of 28 U.S.C. § 1291. They allege that Plaintiffs' age discrimination complaints had not been addressed, and additionally, that any appeal brought before the August 31, 1981 judgment was premature. On October 14, 1981, this court denied the motion to dismiss. The Union has urged us again to consider its contention. We have. It has not improved with age.

■ The first contention, that the district court had not dismissed all claims, is frivolous. The two district court orders dismissing the complaint clearly show that the court completely dismissed all of Plaintiffs' claims against both Sea-Land and the Union.

■ The second contention, that an appeal taken after entry of an order dismissing the complaint but prior to any entry of judgment on the complaint pursuant to Fed.R.Civ.P. 58, is untimely, has been implicitly rejected by this court:

> *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge.
>
> 29 U.S.C. § 160(b).

**4.** The statute in effect at the time the suit was filed provided:

> There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
> 1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing.

Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon 1956).

**5.** That statute provides:

The requirements of Rule 58 may be satisfied by the district court after an appeal is docketed. *Stokes v. Peyton's Inc.*, 5 Cir. 1975, 508 F.2d 1287; *Markham v. Holt*, 5 Cir. 1966, 369 F.2d 940; *Bates v. Batte*, 5 Cir. 1951, 187 F.2d 142, *cert. denied*, 342 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616.

*Kirtland v. J. Ray McDermott & Co.*, 568 F.2d 1166, 1169 (5th Cir. 1978). Thus, the sequence of events wherein the district court dismissed the complaints, the Plaintiffs appealed and the district court then entered judgment did not render these appeals jurisdictionally defective. *Id.*

### III. Statute of Limitations

We are faced in this appeal with several questions. We must decide what statute or statutes of limitation apply in this action brought against both Sea-Land and the Union. If one statute applies to both causes of action against both defendants our inquiry is less complicated, but if different statutes apply to Sea-Land and to the Union we must determine which of several are appropriate. Our inquiry must initially focus on the nature of the actions brought here.

Plaintiffs' action against Sea-Land for breach of the collective bargaining agreement is brought pursuant to § 301[6] of the LMRA, 29 U.S.C. § 185. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 61, 101 S.Ct. at 1563; *Liotta v. National Forge Co.*, 629 F.2d 903, 905–906 (3rd Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981). This action, though phrased in breach of contract terms, must be characterized as "an action to vacate an arbitration award." *United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1564; *Liotta v. National Forge Co.*, 629 F.2d at 905.

The Supreme Court, in its characterization of the action before it as one to vacate an arbitration award, stated:

To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union .... The grievance processes cannot be expected to be error-free. *Hines* 424 U.S., at 570–571, 96 S.Ct., at 1059–60. Thus respondent's characterization of his action against the employer as one for "breach of contract" ignores the significance of the fact that it was brought in the District Court pursuant to § 301(a) of the LMRA and that the indispensable predicate for such an action is not a showing under traditional contract law that the discharge was a breach of the collective—bargaining agreement, but instead a demonstration that the union breached its duty of fair representation .... This, in our view, makes the suit more analogous to an action to vacate an arbitration award than to a straight contract action.

*United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 62, 101 S.Ct. at 1563–64.

In *Mitchell* as well as *Liotta*, the employee had sued only the employer. Furthermore, in *Liotta*, the court specifically stated that the employee's "alleg[ation] that the arbitration award was invalid due to the Union's breach of duty of fair representation does not change the limitations period *because the suit here is against the Company and not the Union.*" *Liotta v. National Forge Co.*, 629 F.2d at 905 (emphasis added).

But what of Plaintiffs' suit against the Union for unfair representation? A review of the complaint indicates it is somewhat similar to that described in *Liotta*, 629 F.2d at 905–06. However, here, Plaintiffs request damages against both Sea-Land and the Union, have sued the Union directly and have appealed as to both Sea-Land and the Union. This presents a different posture than that presented in *Mitchell*, where only the employer appealed the decision to the Supreme Court, or *Liotta*, where the plaintiff employee appealed only from the decision as to the employer. This posture requires very careful scrutiny.

6. See note 1, *supra*.

■ There is no doubt that an action against a Union for breach of duty of fair representation need not be combined with a § 301 action against an employer.

The duty of fair representation is an independent statutory duty that arises from the union's position as exclusive bargaining agent under sections 8 and 9 of the labor laws. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 337, 73 S.Ct. 681, 685, 97 L.Ed. 1048 (1953).

. . . .

A union has a duty to represent fairly all the employees in a bargaining unit because of the rights granted the union under sections 8(b) and 9(a) of the federal labor laws, 29 U.S.C. §§ 158(b), 159(a) (1976). *Vaca v. Sipes,* 386 U.S. [171] at 177, 87 S.Ct. [903] at 909; [17 L.Ed.2d 842] *Smith v. Local 25, Sheet Metal Workers Int'l. Ass'n,* 500 F.2d [741] at 746. These sections are a part of an "Act of Congress regulating commerce" over which the district courts have original jurisdiction under 28 U.S.C. § 1337 (1976). *See Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Lockridge,* 403 U.S. at 274, 91 S.Ct. at 1909 [29 L.Ed.2d 473]; *Smith v. Local 25, Sheet Metal Workers Int'l Ass'n,* 500 F.2d at 748–49.

*In Re Carter,* 618 F.2d 1093, 1104 (5th Cir. 1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981).

This independent jurisdictional basis was explicitly discussed by Justices Stewart and Stevens in *Mitchell,* even though the union was not a party to the appeal in that case. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 67 n.2, 101 S.Ct. at 1566 n.2, (Stewart J., concurring in the judgment) ("The Court has recognized on numerous occasions that '[t]he duty of fair representation is . . . implicit in the National Labor Relations Act.' See, *e.g., Electrical Workers v. Foust,* 442 U.S. 42, 46, n.8, 99 S.Ct. 2121, 2125, n.8, 60 L.Ed.2d 698.").

Justice Stewart further characterized these combination actions as "an amalgam of § 301 . . . and the NLRA," *id.* at 1566, stating:

**7.** See note 5, *supra.*

The respondent here has two claims each with its own discrete jurisdictional basis. The contract claim against the employer is based on § 301, but the duty of fair representation is derived from the NLRA [29 U.S.C. §§ 158(b), 159(a)]. Yet the two claims are inextricably interdependent. "To prevail against either the company or the union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the union." *Hines v. Anchor Motor Freight,* 424 U.S. 554, 570–571, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231. Accordingly, a plaintiff must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer.

*Id.* Because he believed that the actions were an amalgam, Justice Stewart would have applied the six month statute of limitations of § 10(b) of the NLRA,[7] 29 U.S.C. § 160(b), to both actions.

Although § 10(b) of the NLRA was designed to limit the initiation of unfair labor practice claims in order to safeguard the stability of collective-bargaining agreements, the policy behind it applies with equal force in this context.

Congress enacted § 10(b) of the NLRA to protect continuing collective-bargaining systems from delayed attack. The six-month bar of § 10(b) is designed to strengthen and defend the "stability of bargaining relationships." *Machinists Local v. Labor Board,* 362 U.S. 411, 425, 80 S.Ct. 822, 831, 4 L.Ed.2d 832. The time limitation reflects the balance drawn by Congress, "the expositor of the national interest," *id.,* at 429, 80 S.Ct., at 833, between the interest of employees in redressing grievances and "vindicati[ng] [their] statutory rights," *ibid.,* and the "interest in 'industrial peace which it is the overall purpose of the Act to secure.'" *Id.* at 428, 80 S.Ct., at 832 (quot-

ing *Labor Board v. Childs Co.*, 195 F.2d 617, 621–622 (CA2) (L. Hand, concurring). *Id.* at 1566–67.

While Justice Stewart recognized that "one aspect of the respondent's claim in this case is predicated on § 301 of the LMRA," *id.*, rather than on a claim of an unfair labor practice, he was willing to apply § 10(b) to both the § 301 and unfair representation claims, reasoning

> [i]n § 10(b) [of] the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system. That is precisely the balance at issue in this case. The employee's interest in setting aside the "final and binding" determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates "those consensual processes that federal labor law is chiefly designed to promote—the formation of the agreement and the private settlement of disputes under it." *Hoosier*, 383 U.S., at 702, 86 S.Ct., at 1111. Accordingly, "[t]he need for uniformity" among procedures followed for similar claims, *ibid*, as well as the clear congressional indication of the proper balance between the interests at stake, counsel the adoption of § 10(b) of the NLRA as the appropriate limitations period for lawsuits such as this.

*Id.* at 1568.

The majority of the Court, however, refused to address the question of the applicability of § 10(b):

> *Amicus* The American Federation of Labor and Congress of Industrial Organizations has filed a brief arguing that in cases such as the present courts should apply the 6-month limitations period found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1976). The AFL–CIO distinguishes the above-quoted language from *Hoosier Cardinal*

on the ground that *Hoosier Cardinal* involved a § 301 action by a union against an employer, while actions brought by employees against both their union and employer pursuant to our decisions in *Vaca v. Sipes*, 386 U.S. 171 [87 S.Ct. 903, 17 L.Ed.2d 842] (1967) and *Hines v. Anchor Motor Freight, Inc., supra*, are hybrid § 301—breach of duty actions, the union's duty being implied from the NLRA. We decline to consider this argument since it was not raised by either of the parties here or below.

*United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 60 n.2, 101 S.Ct. at 1562 n.2.

Justice Stevens, while also finding discrete jurisdictional bases, did not combine the claim of breach of duty of fair representation with the § 301 claim.

> The employee's claim against his union for breach of the duty of fair representation, however, is of a far different character. Although this claim is closely related to the claim against the employer, the two claims are nonetheless conceptually distinct. The claim against the union may not, in my judgment, be characterized as an action to vacate an arbitration award. The arbitration proceeding did not, and indeed, could not, resolve the employee's claim against the union. Although the union was a party to the arbitration, it acted only as the employee's representative; the joint Panel did not address or resolve any dispute between the employee and the union. Therefore, with respect to the employee's action against the union, the finality and certainty of arbitration are not threatened by the prospect that the employee might prevail on his judicial claim. Because no arbitrator has decided the primary issue presented by this claim, no arbitration award need be undone, even if the employee ultimately prevails.
>
> The employee's claim against his union is properly characterized, not as an action to vacate an arbitration award, but rather as a malpractice claim. There is no conceptual reason why that claim may not survive even if the employer is able

to rely on the arbitration award as a conclusive determination of its obligations under the collective bargaining agreement.

*Id.* at 1569–70 (Stevens, J., concurring in part and dissenting in part).

Thus the majority did not address the question of the statute of limitations as to a union; Justices Stewart and Stevens reached different conclusions as to the appropriate characterization and statute of limitations applicable to an action against both an employer and union.

After *Mitchell*, three Courts of Appeals have reached inconsistent decisions whether, in a suit against a union and an employer, the statute of limitations applicable to the vacation of arbitration awards is applicable to the cause of action against the union. The Third and Ninth Circuits assumed, without analysis, that *Mitchell* was a suit brought against both the union and the employer and that the statute applicable to the vacation of arbitration awards applied to both the employer and the union. *Service Employees International Union, Local No. 36, AFL–CIO v. Office Center Services, Inc.*, 670 F.2d 404, 408 n.7 (3rd Cir. 1982); *Singer v. The Flying Tiger Line Inc.*, 652 F.2d 1349, 1353 (9th Cir. 1981). The Second Circuit, recognizing that the suit in *Mitchell* was against the employer only, reasoned that:

> The question then becomes whether we are bound to follow the somewhat equivocal dicta expressed by a majority of the Court [in *Mitchell*] with reference to a matter which was not specifically before it, or whether we can follow what we think is the more persuasive reasoning expressed in a solitary dissenting opinion. We have struggled with this difficult question. Though we are pressed by the dicta of the majority, we are persuaded by Justice Stevens' analysis. Accordingly, we hold that the arbitration award statute of limitations does not apply [to the union].

*Flowers v. Local 2602 of United Steel Workers*, 671 F.2d 87, 90 (2nd Cir. 1982).

District courts in our circuit have rendered inconsistent opinions. *McFarland v. International Brotherhood of Teamsters Local 745*, 535 F.Supp. 970 (N.D.Tex.1982); *Weed v. East Texas Motor Freight Lines, Inc.*, No. CA–3–79–0881–G (N.D.Tex., January 22, 1982).

In *McFarland*, the district court applied the reasoning of Justice Stevens that, because the suit against the union had an independent jurisdictional basis, it was not governed by *Mitchell*. In *Weed*, the district court applied the *Mitchell* reasoning to a suit against the Union stating:

> [t]his court is compelled to read the majority's decision broadly to characterize a claim against a union for breach of duty of fair representation *when combined* with a claim against an employer for breach of contract as "analogous to an action to vacate an arbitration award." 49 U.S.L.W. at 4379. [101 S.Ct. at 1564]

*Weed v. East Texas Motor Freight Lines, Inc.*, slip op. at 4 (emphasis added).

The first question before us then is the one articulated in *Weed*: when there is a combination action for breach of duty of fair representation and an action to vacate an arbitration award, are both actions covered by the statute of limitations governing an action to vacate an arbitration award?

The answer must be in the negative. The statute of limitations applicable to the suit against the Union is independent of any limitation applicable to the § 301 action against Sea-Land. While the Supreme Court has stated that the breach of duty of fair representation is "a creature of labor law", it is a creature of a different area of labor law than an action brought under § 301. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 66 n.2, 101 S.Ct. at 1566 n.2 (Stewart, J., concurring in the judgment). As this court has stated, this claim has an independent jurisdictional basis. *In Re Carter*, 618 F.2d 1093 at 1104 (5th Cir.). Although the Plaintiffs here did not explicitly separate their causes of action against Sea-Land and the Union, we cannot say that because they combined their causes of action they are bound in their suit

against the Union by any statute of limitations applicable to an action to vacate an arbitration award. Clearly, if the Plaintiffs had brought the action only against the Union, a characterization of this action as one under § 301 to vacate an arbitration award would have been inappropriate. *Id.* Such a characterization of the action against the Union when that action is combined with one against Sea-Land is also inappropriate.

Justice Stevens' reasoning as to such an action against a union seems particularly apposite:

While an arbitration decision favorable to the employer—for example, that the discharge did not breach the collective-bargaining agreement—would be of substantial significance in an employee's suit against his union, it would not necessarily be dispositive. The determination whether the employer breached the agreement may be highly relevant to the amount of damages caused by the union's alleged breach of duty, but it is not necessarily controlling with respect to the threshold question whether there was a breach of duty by the union at all. For example, if, solely for reasons of racial bias, a union processes a discharged employee's grievance in bad faith, the union breaches its duty of fair representation. Cf. *Steele v. Louisville & Nashville Railroad Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. The fact that the underlying discharge may not have violated the collective-bargaining agreement does not necessarily absolve the union of liability for its breach, although it may limit the size of the employee's recovery against the union. Thus, while a court considering an employee's claim against a union will evaluate the validity of the employer's underlying conduct, that evaluation is not central to the resolution of the duty of fair representation claim.

*United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 73 n.4 101 S.Ct. at 1569 n.4 (Stevens, J., concurring in part, dissenting in part).

Justice Stevens concluded:

Thus, by analogy, a lawyer who negligently allows the statute of limitations to run on his client's valid claim may be liable to his client even though the original defendant no longer has any exposure. Cf. *Smart v. Ellis Trucking Co.,* 580 F.2d 215, 218–219 (CA 6 1978), cert. denied, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770.

*Id.* at 1570.

Only if we adopt Justice Stewart's reasoning that the claims may be combined into "an amalgam of § 301" is one statute of limitations appropriate, the six month limitation found in § 10(b) of the NLRA. Because, however, § 10(b) is applicable only to unfair labor practices and does not cover a § 301 action as described in *Mitchell* and because there is no explicit authority to adopt the six-month federal statute of limitations for both causes of action, we decline to adopt Justice Stewart's position. Instead we join the Second Circuit in its view that an action against a union for breach of duty of fair representation is not constrained by the limitation appropriate to a § 301 action against an employer. Instead, we must consider each cause of action separately to determine the appropriate statute of limitations.

### A. Section 301 Statute of Limitations

#### 1. General Principles

■ "Congress has not enacted a statute of limitations governing actions brought pursuant to § 301 of the LMRA." *United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 60, 101 S.Ct. at 1562. Its failure to do so requires a court hearing a § 301 suit to determine the appropriate statute of limitations. In *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), AFL–CIO v. Hoosier Cardinal Corp., supra,* the Court held that, in an action under § 301 for damages brought by a union against an employer for breach of a collective bargaining agreement, the state statute of limitations governed.

Accordingly, since no federal provision governs, we hold that the timeliness of a

§ 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.

*Id.* 383 U.S. at 705, 86 S.Ct. at 1113.

The Court in *Mitchell*, relying on *Hoosier Cardinal, supra*, stated that "the timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 60, 101 S.Ct. 1562.

The Court, however, in a footnote, did not explicitly reject application of a federal statute of limitations, noting that

> *Amicus* The American Federation of Labor and Congress of Industrial Organizations has filed a brief arguing that in cases such as the present courts should apply the 6-month limitations period found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1976). The AFL–CIO distinguishes the above-quoted language from *Hoosier Cardinal* on the ground that *Hoosier Cardinal* involved a § 301 action by a union against an employer, while actions brought by employees against both their union and employer pursuant to our decisions in *Vaca v. Sipes*, 386 U.S. 171 [87 S.Ct. 903, 17 L.Ed.2d 842] (1967) and *Hines v. Anchor Motor Freight, Inc., supra,* are hybrid § 301—breach of duty actions, the union's duty being implied from the NLRA. We decline to consider this argument since it was not raised by either of the parties here or below.

*Id.* at 1562 n. 2. The Court further noted that the question before it was not whether the state statute of limitations should apply but, assuming a state statute applied, which of several state statutes was appropriate. *Id.* While these notations indicate that application of a federal statute of limitations is not foreclosed by *Mitchell*, the earlier language of the Court, in *Hoosier Cardinal*, in its discussion of the rationale for application of the state statute of limitations, indicates strongly that, in the absence of a specific limitation in the federal statute which creates the cause of action, we should initially look to the most appropriate state statute.

As early as 1830, this Court held that state statutes of limitations govern the timeliness of federal causes of action unless Congress has specifically provided otherwise. *McCluny v. Silliman*, 3 Pet. 270, 277 [7 L.Ed. 676]. In 1895, the question was re-examined in another context, but the conclusion remained firm. *Campbell v. Haverhill*, 155 U.S. 610 [15 S.Ct. 217, 39 L.Ed. 280]. Since that time, state statutes have repeatedly supplied the periods of limitations for federal causes of action when federal legislation has been silent on the question. *E.g., McClaine v. Rankin*, 197 U.S. 154 [25 S.Ct. 410, 49 L.Ed. 702]; *Cope v. Anderson*, 331 U.S. 461 [67 S.Ct. 1340, 91 L.Ed. 1602] (National Bank Act); *Chattanooga Foundry v. Atlanta*, 203 U.S. 390 [27 S.Ct. 65, 51 L.Ed. 241] (Sherman Act); *O'Sullivan v. Felix*, 233 U.S. 318 [34 S.Ct. 596, 58 L.Ed. 980] (Civil Rights Act of 1870); *Englander Motors, Inc. v. Ford Motor Co.*, 293 F.2d 802 (C.A. 6th Cir.) (Clayton Act); but see *Holmberg v. Armbrecht*, 327 U.S. 392 [66 S.Ct. 582, 90 L.Ed. 743] (Federal Farm Loan Act). Yet when Congress has disagreed with such an interpretation of its silence, it has spoken to overturn it by enacting a uniform period of limitations. *E.g.,* 69 Stat. 283, 15 U.S.C. § 15b (1964 ed.) (Clayton Act); 35 U.S.C. § 286 (Patent Act). See also *Herget v. Central Bank Co.*, 324 U.S. 4 [65 S.Ct. 505, 89 L.Ed. 656]. Against this background, we cannot take the omission in the present statute as a license to judicially devise a uniform time limitation for § 301 suits.

Accordingly, since no federal provision governs, we hold that the timeliness of a § 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.

*Hoosier Cardinal*, 383 U.S. at 703–05, 86 S.Ct. at 1111–1113. Moreover, considering the Supreme Court's recent application, in *Mitchell*, of the New York state statute of limitations applicable to vacation of arbitra-

tion awards, it seems particularly appropriate for us to consider whether Texas has a statute of limitations relating to arbitration awards and, if so, whether that limitation is appropriate here.

### 2. Appropriateness of the Texas General Arbitration Act

"The characterization of [an] action for the purpose of selecting the appropriate state statute of limitations is ultimately a question of federal law." *Hoosier Cardinal,* 383 U.S. at 706, 86 S.Ct. at 1113. In *Hoosier Cardinal,* the Court's characterization of the action before it was one for breach of contract. *Id.* In determining which state statute of limitations was applicable, the Court accepted the state's characterization of the breach of contract action as one not based "exclusively ... upon a written contract" *id.,* stating "there is no reason to reject the characterization that state law would impose unless that characterization is unreasonable or otherwise inconsistent with national labor policy." *Id.*

As noted above, a ninety-day limitation is set forth in the Texas General Arbitration Act.[8] Texas, has, in fact, adopted, in large part, the Uniform Arbitration Act which was also the basis for the New York act adopted by the Supreme Court in *Mitchell.* There is, however, one notable change which was engrafted into the Texas General Arbitration Act in 1965 and carried forth when the act was amended by the Texas legislature in 1979:

Provided, however, that none of the provisions of this Act shall apply to:

(a) any collective bargaining agreement between an employer and a labor union;

Tex.Rev.Civ.Stat.Ann. art. § 224, 224(a) (Vernon 1979).

From the analysis in *Hoosier Cardinal* and the content of the Texas General Arbitration Act, we find we are faced with three questions. First, may the ninety day limitation of the Texas General Arbitration Act be applied *in spite of* the exclusion? Second, if it cannot be applied, would the

application of another state statute of limitations be "unreasonable or inconsistent with national labor policy"? Finally, a third question must be considered in our tortuous search for the appropriate statute of limitations: if a Texas statute seems "unreasonable" or "inconsistent," is there a federal statute of limitations which would be more appropriate in this action to vacate an arbitration award?

■ As to the first question, Sea-Land and the Union argue that we may apply the Texas limitation despite the exclusionary language. The district court agreed. Their position is based upon the argument that, despite its exclusion, the Texas Arbitration Act fulfills the federal labor policy of "relatively rapid disposition of labor disputes." *United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 63, 101 S.Ct. at 1564, *quoting Hoosier Cardinal,* 383 U.S. at 707, 86 S.Ct. at 1114. Defendants argue that the Texas exclusion simply keeps the Texas General Arbitration Act from fitting "hand in glove" with the action brought by Plaintiffs. They argue that, because the *Mitchell* Court recognized that state statutes of limitation would not fit "hand in glove," but was nevertheless willing to apply such statutes, *id.* at 1565, we should adopt the Texas ninety-day limitation here. We agree that the Texas General Arbitration Act does not, in this case, fit "hand in glove." We further find that this ill-fitting statute may not serve as an appropriate statute of limitations.

Texas has specifically chosen to exclude "collective bargaining agreements" from its arbitration act. While it cannot be denied that "uniformity and rapidity of decision" are goals of national labor policy, we are constrained to recognize, as did the Supreme Court in *Hoosier Cardinal,* that:

[A]lthough a uniform limitations provision for § 301 suits might well constitute a desirable statutory addition, there is no justification for the drastic sort of judicial legislation that is urged upon us....

---

**8.** See note 2, *supra.*

*Hoosier Cardinal*, 383 U.S. at 703, 86 S.Ct. at 1111. We simply will not apply the Texas General Arbitration Act to collective bargaining agreements by judicial fiat when the Texas legislature has refused to do so over the course of the seventeen years that the exclusion has been present in the Texas act.

Moreover, the argument that we cannot expect the Texas General Arbitration Act to fit "hand in glove" with this § 301 action is not persuasive. The Texas exclusion was not one passed "prior to the enactment of § 301 by Congress in 1947," *United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1564, but was passed in 1965 and continued in 1979 when the statute was amended. The Texas legislature has had the opportunity to amend its arbitration act to include those agreements arising from collective bargaining. It has declined to do so. Thus, the Supreme Court's rationale for using state statutes of limitation which do not fit "hand in glove" is inapposite here.

Furthermore, the limitations for at least some types of § 301 actions are not as "uniform" today as Sea-Land and the Union would assert. *Hoosier Cardinal* explicitly allows at least some § 301 actions for damages to be governed by fifty different state statutes and brought as late as *six years* after the alleged violation. Further, the Court in *Mitchell* recognized that a *six year* state statute might, in some circumstances, be applicable to a § 301 action to vacate an arbitration award.[9] While its

comment in *Mitchell* was dicta, that dicta and the decision in *Hoosier Cardinal* do not necessarily import a movement toward uniformity in our controlling precedent. Rather, these decisions in *Hoosier Cardinal* and *Mitchell* indicate the Court has considered determinative factors other than rapidity and uniformity. In the case before us, application of the Texas General Arbitration Act and its ninety-day limitation would require that we judicially create a limitation period explicitly rejected by the Texas legislature. This we cannot do. The (at best uncertain) quest for uniformity cannot cause this court to usurp the legislative role.

Turning to the district court's premise for its decision, we find a different rationale than that argued to us by Sea-Land and the Union. The district court reasoned that this action to vacate an arbitration award was not the type of action contemplated by the Texas exclusion.[10] The district court cited the *Mitchell* Court's statement that a § 301 action was more a creature of "labor law" than it is of "general contract law," *United Parcel Service Inc. v. Mitchell*, 451 U.S. at 63, 101 S.Ct. at 1564, to justify its holding. While it is unclear exactly what the district court intended by that remark, if it was reasoning that the Texas exclusion was aimed only to questions of "contract law" rather than questions of "labor law," that rationale finds no support in the clear language of the Texas General Arbitration Act[11] itself. The Texas statutory exclusion

---

**9.** The Court stated:

Obviously, if New York had adopted a specific 6-year statute of limitations for employee challenges to awards of a Joint Panel or similar body, we would be bound to apply that statute under the reasoning of *Hoosier Cardinal*.

*United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1564.

**10.** The rationale expressed in one other decision in which this Texas exclusion has not been applied warrants note. *McFarland v. International Brotherhood of Teamsters, Local 745, supra.* In *McFarland*, the district court stated that the choice of limitations is a matter of federal law and "the choice of the appropriate state statute 'depends upon an examination of the nature of the federal claim and the federal parties involved.' Therefore, the state's own

characterization of what its statute applies to is of no force in the Court's determination." *Id.* at 973. If the district court was reasoning that the Texas exclusion of arbitration actions under collective bargaining agreements might, under some circumstances, render use of another state statute inappropriate, as a limitation, we agree. See text, pp. 1289–1291, infra. If, however, the court was stating that we can overrule the Texas legislature and apply the ninety-day limitation in its General Arbitration Act when Texas has explicitly chosen not to, we express serious reservations based on our concerns about the proper role of the judiciary vis-a-vis the legislature.

**11.** The Ninth Circuit has recently applied the Oregon 20 day statute of limitations to vacate an arbitration award, despite exclusionary lan-

explicitly states that arbitration agreements (and, implicitly, the vacation of such agreements) resulting from one of the most basic tenets of "labor law"—the collective bargaining agreement—are not to be a part of the Texas General Arbitration Act. The exclusion in the Texas act is not limited to contract law, but clearly applies to those types of actions which the Supreme Court in *Mitchell* distinguished as being products of "labor law" rather than "contract law." Arbitration agreements arising from collective bargaining agreements are simply not included in the Texas General Arbitration Act.

Finally, the Union, at oral argument, asserted that this action was not within the meaning of the Texas exclusion of "any collective bargaining agreement between an employer and a labor union." According to the Union, the predicate to recovery by Plaintiffs against Sea-Land is a finding of breach of duty of fair representation by the Union. This duty, according to the Union, arises from the exclusivity of the Union's right to bargain,[12] not from the "collective bargaining agreement" as contemplated in the Texas exclusion. Because the predicate issue, breach of duty of fair representation, would not be covered by the provisions of the Texas General Arbitration Act, this § 301 action to vacate an arbitration award should not, according to the Union, be cov-

ered. This argument is unpersuasive. The *Mitchell* Court characterized the action in the nature of an action to vacate an arbitration award despite the need for a predicate finding of breach of duty of fair representation. The Court then applied the statute of limitations of the New York arbitration act. It would seem to be a contradiction for this court to now hold, consistent with *Mitchell*, that this action is usually to be characterized as one in the nature of vacation of an arbitration award (rather than breach of contract) and that as a result, a state arbitration act should apply, but that, because the Texas legislature has chosen to exclude arbitration agreements arising from a collective bargaining agreement from the coverage of its act, this particular action against the employer will not be characterized as one to vacate an arbitration award. The nature of this action cannot be distorted because Texas has determined to exclude it from coverage of its arbitration act.

In summary, we reject the arguments offered by lower courts and the parties as a means for this court to abrogate the clear intention of the Texas legislature. The Texas General Arbitration Act, excluding as it does "collective bargaining," cannot be considered to set forth the appropriate statute of limitations.

guage that expressly excludes "conditions of employment under collective bargaining contracts." *Local 1020 of the United Brotherhood of Carpenters and Joiners of America v. FMC Corporation*, 658 F.2d 1285 (9th Cir. 1981).

The court, in applying the short statute, reasoned that because the collective bargaining contracts at issue had provided no "specific period within which proceedings to vacate arbitration awards would have to be instituted," *id.* at 1289, the court was free to use the 20 day limit. We do not quarrel with that court's reasoning, but rather look to the nature of the Texas limitation. The Texas act arguably applies to more than just conditions of employment under contracts. Its language is broad; nothing in its language indicates it applies only to situations where there is no time limitation in an employment contract. We decline to engraft into the Texas exclusion an exception for which we can find no legislative or judicial authority. Any enactment of that exception

more properly belongs to the Texas legislature, not this court.

12. The Seventh Circuit has reasoned that "federal law allows a collective bargaining agreement to vest the union with exclusive rights of all employees in the bargaining unit. *See* 29 U.S.C. § 159(a) (1970); *Humphrey v. Moore*, 375 U.S. 335 [84 S.Ct. 363, 11 L.Ed.2d 370] (1965)." *Baker v. Amsted*, 656 F.2d 1245, 1249 (7th Cir. 1981). Thus, it could be argued that because the action for vacation of an arbitration agreement flows from an action for breach of duty of fair representation which flows from the exclusivity of bargaining and is based upon the collective bargaining agreement, the Texas exclusion must apply. We need not decide this highly speculative question as we hold that the action against the employer, although predicated on a claim of breach of duty of fair representation, is ultimately one in the nature of vacation of an arbitration award as contemplated by the exclusion in the Texas act.

After determining that the Texas General Arbitration Act is inapplicable, we must ask what is the applicable state statute of limitations and whether that statute imposes an unreasonable characterization upon this § 301 action.

Prior to the Supreme Court's characterization of this § 301 action as an action to vacate an arbitration agreement, the four-year Texas statute of limitations for breach of contract, Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon 1956), had been applied by at least one court. *Hensley v. United Transports, Inc.*, 346 F.Supp. 1108 (N.D.Tex.1972). Because the breach of contracts characterization is no longer appropriate, *see Mitchell, supra*, and because Texas has not assigned a specific limitation to arbitration actions arising from collective bargaining agreements, we must inquire what limitation Texas would impose for the vacation of such arbitration awards. We find the limitation to be four years as set forth in the Texas "catch all" statute of limitations.[13] Tex.Rev.Civ.Stat.Ann. art. 5529 (Vernon 1956).

Is that limitation unreasonable or otherwise inconsistent with national labor policy? Certainly, as noted above, a four year statute of limitations does not seem totally consistent with the policy of rapid and uniform disposition of labor disputes as implied in the *Mitchell* Court's adoption of a ninety-day limitation. However, the Court in *Mitchell*, though it adopted the ninety-day limitation, did not cast its adoption in stone; rather it explicitly stated it would be willing to accept a statute as long as six years if that should be the period of time adopted by a state for actions to vacate arbitration awards. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1564. Here, Texas has implicitly rather than explicitly provided for a four year limitation for arbitration actions. After *Mitchell* we should honor this state determination.

Moreover, in *Hoosier Cardinal* the Court implicitly opted for as many as fifty different limitations of up to six years in at least some § 301 actions. While rapidity and uniformity are goals, the Supreme Court has provided no clear path to these goals nor has it consistently implemented these goals. The limitations period adopted by Texas is shorter than the ones suggested in either *Mitchell* or *Hoosier Cardinal*. Thus we cannot say acceptance of the Texas statute is any less reasonable or more inconsistent than that accepted by the Court in *Mitchell* or *Hoosier Cardinal* when faced with competing concerns. We do not, at this point, reject the Texas four-year period of limitations.

If we, however, are to attempt to move toward these articulated, but not necessarily implemented, goals of rapidity and uniformity we must answer a final question: whether there exists an appropriate federal statute of limitations, before we can fully answer the question whether, considering the apparent inconsistency with national labor policy, we should adopt the Texas four-year limitation.

### 3. An appropriate federal limitation?

The Union has suggested application of the limitation contained in the Federal Arbitration Act,[14] 9 U.S.C. § 12, of ninety days or, in the alternative, the six-month limitation of § 10(b)[15] of the NLRA suggested by Justice Stewart in his concurrence in *Mitchell*. While either of these statutes would provide for a shorter limitation than the Texas statute, there are problems with the adoption of either.

The Federal Arbitration Act specifically excludes contracts of employment of "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The district court reasoned that the Federal Arbitration

---

**13.** The statute provides:

Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward.

Tex.Rev.Civ.Stat.Ann. art. 5529 (Vernon 1956).

**14.** See note 3, *supra*.

**15.** See note 5, *supra*.

Act could, however, apply because " 'it has been held that judicial decisions making arbitration clauses specifically enforceable, have the effect of making labor contracts indistinguishable from other contracts governed by the [Federal Arbitration Act].' " *Gas Workers Local No. 80 v. Michigan Consolidated Gas*, 503 F.Supp. 155, 157 (E.D. Mich.1980). Moreover, according to the district court, the limitations period of the federal act is appropriate because since "this case indisputably involves interstate commerce, there is no question that this Court may . . . 'fashion a uniform rule after consideration of the relevant federal and state statutes.' "

■ It is, however, precisely *because* this action involves interstate commerce in the transportation industry that the exclusionary language of § 1 of the Federal Arbitration Act applies. Although some district courts have applied the Federal Arbitration Act in spite of Congress' exclusion, *Gas Workers, supra*, we will not do what Congress has refused to do; we will not change the limitations of the Federal Arbitration Act by judicial fiat. Such change is within the province of the legislative branch, not the courts.

The Union further argues that the Federal Arbitration Act may be applied because the exclusion stated in § 1 merely means that the Federal Arbitration Act does not fit "hand in glove" with a § 301 action. Whatever persuasive force that argument had with respect to state statutes of limitation which fail to fit "hand in glove" with federal causes of action, it carries no force with respect to a federal statute of limitations as it might apply to a federal cause of action. We simply will not invent, by judicial decree, a statute of limitations where Congress has failed to do so. *See Hoosier Cardinal*, 383 U.S. at 703, 86 S.Ct. at 1111.

Sea-Land argues that collective bargaining agreements such as the one in the case before us are not contracts of employment excluded under § 1. It relies on a Supreme Court decision in which arbitration under a collective bargaining agreement was enforced, it claims, under the Federal Arbitration Act. *Lincoln Mills of Alabama v. Textile Workers of America*, 230 F.2d 81 (5th Cir. 1956), *rev'd*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). *Lincoln Mills* involved an action brought by a union against an employer for specific enforcement of a collective bargaining agreement to submit employee grievances to arbitration. The appellate court had found no authority in state or federal law to order such arbitration. The Supreme Court found the authority in federal law, specifically in § 301 of the LMRA. It did not determine, or by its silence imply, that it was the Federal Arbitration Act which applied to this action to enforce arbitration. It was instead the collective bargaining agreement between the union and the employer, the breach of which was cognizable under § 301, which gave life to the action. *Id.*, 353 U.S. at 450–58, 77 S.Ct. at 914–918. *See Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Company, Inc.*, 628 F.2d 1023, 1025 (7th Cir. 1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981) (Section 301, not the Federal Arbitration Act, provides the basis for an action to vacate an arbitration agreement.). We cannot, on the basis of *Lincoln Mills*, ignore the exclusion of § 1.

■ Finally, the Union asserts that the 6-month limitation of § 10(b) of the National Labor Relations Act [16] applies. This action, however, only applies to unfair labor practices as delineated in the NLRA, 29 U.S.C. § 158(b), 159(a). A § 301 action against an employer is not such an action. Section 10(b) is not appropriate. *See United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 76, 101 S.Ct. at 1571 (Stevens, J., concurring in part, dissenting in part).

In conclusion, because there is no appropriate federal statute of limitations as to the § 301 action against the employer, we apply the four-year Texas limitation.[17]

**16.** See note 5, *supra*.

**17.** See note 13, *supra*.

While application of this state statute does not portend uniformity in § 301 actions, neither the Supreme Court in its decisions nor Congress in its legislation has given us a path to uniformity. Because no other statute is more "appropriate," until legislative action is taken to change the present state of affairs, the four year Texas statute of limitations governs this action against the employer.

### B. "Unfair Representation" Statute of Limitations

An action for breach of duty of fair representation has been characterized as in the nature of a tort action by this court. *Cox v. C. H. Masland & Sons, Inc.*, 607 F.2d 138, 143 (5th Cir. 1979); *Sanderson v. Ford Motor Company*, 483 F.2d 102, 114 (5th Cir. 1973). The statute of limitations in Texas for a tort action is two years. Tex.Rev.Civ. Stat.Ann. art. 5526 (Vernon 1981). The question then, must be: does *Mitchell* preclude continuation of this tort characterization, mandate a new characterization and perhaps require application of a new statute of limitations? We find it does not.

The Court, in a footnote in *Mitchell*, reasoned that the action before it against the employer could not be characterized in the nature of a tort:

> All of these characterizations suffer from the same flaw as the effort to characterize the action as one for breach of contract: they overlook the fact that an arbitration award stands between the employee and any relief which may be awarded against the company.

*United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 62 n.4, 101 S.Ct. at 1564 n.4.

The action against the Union, however, is an independent action which does not require the same characterization as the § 301 claim against the employer. Because no arbitration award stands between the employee and a recovery against the Union, this footnote in *Mitchell* is inapposite to the claim here against the Union. *See Id.* at 1570 (Stevens, J., concurring in part and dissenting in part). This action for breach of duty of fair representation, may, after

*Mitchell*, continue to be characterized as a type of tort action. *Accord, Flowers v. Local 2602 of United Steel Workers*, 671 F.2d at 90.

We also decline to adopt the § 10(b) limitation suggested by Justice Stewart in *Mitchell*. We agree with Justice Stevens that § 10(b) does not apply to this claim of breach of duty of fair representation for the reasons he stated in *Mitchell*:

> The National Labor Relations Act was enacted in 1935. 49 Stat. 449. Although § 10(b) was a part of the Act at that time, in its original form it did not contain a period of limitations. 49 Stat. 453–454. The 6-month limitations period upon which Justice Stewart relies was added to § 10(b) in 1947. 61 Stat. 146. Six years later, the Court decided the first in a series of cases recognizing that the National Labor Relations Act imposes a duty of fair representation upon unions. *See Ford Motor Co. v. Huffman*, 345 U.S. 330 [73 S.Ct. 681, 97 L.Ed. 1048]. In 1967, in *Vaca v. Sipes*, 386 U.S. 171, [87 S.Ct. 903, 17 L.Ed.2d 842] the Court clearly held that this duty may be judicially enforced. *See generally Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563–567 [96 S.Ct. 1048, 1055–1057, 47 L.Ed.2d 231].

*United Parcel Service, Inc. v. Mitchell*, 451 U.S. at 76 n.9, 101 S.Ct. at 1571 n.9 (Stevens, J., concurring in part, dissenting in part). We adopt the position of the Second Circuit:

> We are persuaded by Justice Stevens' view that section 10(b) is inapplicable both because it relates only to administrative procedures established by Congress to resolve unfair labor practices (*see* Justice Stewart's concurrence) and because it was adopted by Congress six years before the duty of fair representation was recognized.

*Flowers v. Local 2602 of United Steel Workers*, 671 F.2d at 90.

We reverse the district court's dismissal of the Plaintiffs' claims against both Sea-Land and the Union and remand to the district court. Because the suit was brought only one year after the denial of

the award in the arbitration proceeding, it was timely brought as to both Sea-Land and the Union.

Defendants shall bear the cost of this appeal.

REVERSED and REMANDED.