George C. McFARLAND

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 745, et al.**

No. CA3–80–0780–F.

United States District Court,
N. D. Texas,
Dallas Division.

March 2, 1982.

David B. Winn and Alan H. Cooper, Kasmir, Willingham & Krage, Dallas, Tex., for plaintiff.

James L. Hicks, Jr., Hicks, Gillespie, James & Agee, P. C., Dallas, Tex., for Local 745.

William C. Strock and Steve Kardell, Jr., Seay, Gwinn, Crawford, Mebus & Blakeney, Dallas, Tex., for Consol. Freightways Corp.

## MEMORANDUM ORDER

ROBERT W. PORTER, District Judge.

Plaintiff brings this action pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against his former employer and union alleging that his discharge was a breach of the collective bargaining agreement and that the union breached its duty of fair representation in the processing of his grievance. The action is before the Court on the motions of both Defendants for summary judgment. Three distinct issues are raised. First, is Plaintiff's claim barred by the appropriate statute of limitations? Second, is Plaintiff's claim against the union barred by his failure to exhaust union remedies? Finally, does the summary judgment evidence es-

tablish that there are no issues of material fact and that as a matter of law the union's conduct is unactionable?

## I. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The burden of proof falls upon the party seeking summary judgment and all reasonable doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party. *Erco Industries Ltd. v. Seaboard Coast Line R. Co.*, 644 F.2d 424, 428 (5th Cir. 1981); *Keiser v. Coliseum Properties*, 614 F.2d 406, 410 (5th Cir. 1980). Further, in considering such a motion, the district court must view the summary judgment evidence in the light most favorable to the non-movant. *Erco, supra* at 428; *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

## II. LIMITATIONS

Plaintiff filed the instant action on June 20th, 1980. The Defendant Consolidated Freightways of Delaware ("Consolidated") discharged Plaintiff from his position as a city driver on July 6th, 1978. On August 1st, 1978 the Defendant Teamster Local 745 unsuccessfully represented Plaintiff in the final step of the grievance procedure provided under the collective bargaining agreement. Pursuant to the collective bargain-

ing agreement, the decision of Southern Multi-State Grievance Committee is final and binding upon Plaintiff.

■ Prior to the Supreme Court's recent opinion in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), it seemed to be the well settled law in this circuit that hybrid § 301 actions such as the one at bar were characterized as tort actions. *See Sanderson v. Ford Motor Co.*, 483 F.2d 102, 114 (5th Cir. 1973); *Cox v. C. H. Masland & Sons, Inc.*, 607 F.2d 138, 143 (5th Cir. 1979). Congress did not enact a statute of limitations for the governance of actions brought pursuant to § 301 of the Labor Management Relations Act and the timeliness of such a suit is a matter of federal law. *Mitchell, supra,* 451 U.S. at 56, 101 S.Ct. at 1559, 67 L.Ed.2d at 732. Further the appropriate limitations period is determined by reference and analogy to state law. *Mitchell, supra* 451 U.S. at 58, 101 S.Ct. at 1561, 67 L.Ed.2d at 733. In *Mitchell*, the Supreme Court determined that a section 301 suit against an employer for reinstatement and backpay "is more analogous to an action to vacate an arbitration award than to a straight contract action." 451 U.S. at 63, 101 S.Ct. at 1564, 67 L.Ed.2d at 740.[1]

Defendants, relying upon the holding in *Mitchell*, contend that the 90 day statute of limitations found in the Texas General Arbitration Act[2] applies to the instant case and the Plaintiff's claim is therefore time barred. Plaintiff contends that *Mitchell* is distinguishable from the case at bar,[3] and that in any event, the specific language of the Texas General Arbitration Act[4] pre-

1. Only the employer in Mitchell sought review of the decision of the Court of Appeals. 451 U.S. at 71, 101 S.Ct. at 1568, 67 L.Ed.2d at 746 n.1 (Stevens, J. concurring in part and dissenting in part).

2. Tex.Rev.Civ.Stat.Ann. art. 237 B (Vernon's 1973):
   "Sec. B. An application under this article shall be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety days after such grounds are known or should have been known."

3. *See* note 1, *supra.* Plaintiff contends that sole issue addressed by the Supreme Court in *Mitchell* related to section 301 suits against employers, and that therefore Plaintiff's claim against the union is not governed by *Mitchell.* See 451 U.S. 70–75, 101 S.Ct. 1568–70, 67 L.Ed.2d 745–49 (Stevens, J. concurring in part and dissenting in part).

4. Tex.Rev.Civ.Stat.Ann. art. 224 (Vernon's 1980–81 Supp.):
   A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any

cludes application of its provisions to labor disputes such as the one at bar.

■■■ The first issue before the Court is whether or not the holding in *Mitchell* is applicable to Plaintiff's claims against the union. As noted above, Plaintiff contends that the decision in *Mitchell* is limited solely to section 301 claims against employers. The opinion of the Court in *Mitchell* does not address the distinction between claims against employers and claims against unions. Because the Plaintiff's claim against the union in *Mitchell* was not before the Court[5] it must be assumed that the holding is limited to section 301 suits against employers. Therefore, the case is not binding precedent with respect to McFarland's claim against the union and the Court looks to the prior decisional law of this circuit. The claim against the union is properly characterized as a tort. *Sanderson v. Ford Motor Company*, 483 F.2d 102, 114, (5th Cir. 1973). The state of Texas has a two-year statute of limitation for "injury done to the person of another," Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon's 1980–81 Supp.). Accordingly, on the undisputed facts of this case, Plaintiff's claim against the union is not time barred.

With respect to Plaintiff's claims against the employer, Consolidated Freightways, it is all too clear that the holding and rationale of *Mitchell* are applicable. The unmistakable import of the *Mitchell* opinion is that section 301 suits against employers for reinstatement and backpay are characterized as actions to vacate arbitration awards. The Texas General Arbitration Act has a ninety day statute of limitations, similar to the New York statute chosen by the Court in *Mitchell*. Hence, it would appear that the application of the Texas ninety day

statute would promote the same general federal labor law policies noted in *Mitchell*. See 451 U.S. at 63 n.5, 101 S.Ct. at 1564 n.5, 67 L.Ed.2d at 740 n.5 (rapid disposition of labor disputes). Plaintiff contends, however, that the literal language of the Texas General Arbitration Act precludes its application to the facts of this case. Article 224(a) of the Act expressly states that the Act does not apply to "any collective bargaining agreement between an employer and a labor union." This argument misses the mark. As stated above, the choice of limitations is a matter of federal law. And the choice of the appropriate state statute "depends upon an examination of the nature of the federal claim and the federal policies involved." 451 U.S. at 60, 101 S.Ct. at 1563, 67 L.Ed.2d at 739. Therefore, the state's own characterization of what its statute applies to is of no force in the Court's determination.

Plaintiff further contends that any period of limitations shorter than four months necessarily creates a "Catch-22." Plaintiff notes that the Defendant Union in this action has moved for summary judgment on the ground that Plaintiff has failed to exhaust his internal union remedies. By virtue of section 101(a) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a), a union may insist, through its bylaws or constitution, that an employee exhaust union procedures for at least four months prior to instituting suit against the union. Thus, contends Plaintiff, if suit must be filed within ninety days of the arbitration award, it will be difficult, if not impossible in the usual case, for a plaintiff to exhaust intra-union remedies. If a plaintiff pursues intra-union exhaustion for four

controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. A Court shall refuse to enforce an agreement or contract provision to submit a controversy to arbitration if the court finds it was unconscionable at the time the agreement or contract was made. Provided, however, that none of the provisions of this Act shall apply to:

(a) any collective bargaining agreement between an employer and a labor union ....

5. Justice Rehnquist, in the opening paragraph of the opinion of the Court in *Mitchell*, states that the issue in the case is "which state statute of limitations period should be borrowed and applied to an employee's action against his employer under § 301(a) of the Labor Management Relations Act ... " "451 U.S. at 58, 101 S.Ct. at 1561, 67 L.Ed.2d at 737.

months, so the argument goes, the claim will be time barred. This argument deserves short shrift for two distinct reasons. First, the Court has determined that the holding of *Mitchell* is only applicable to Plaintiff's claim against the employer— Plaintiff's claim against the union is governed by the Texas two year statute of limitations for personal injuries. Second, the employer may not assert the exhaustion defense where, as here, exhaustion of internal union remedies "cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his 301 suit." *Clayton v. International Union, United Automobile, Areospace, & Agricultural Workers of America,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

■ In sum, the Court is of the opinion that, on the basis of the *Mitchell* decision, the Texas ninety day arbitration vacation statute of limitations governs Plaintiff's claim against the employer in this action. It is undisputed that this action was not filed within ninety days of the award of the Multi-State Grievance Committee on August 1st, 1978. Nevertheless, for the reasons set forth in *Weed v. East Texas Motor Freight Lines,* No. 79-0881 G (N.D.Tex January, 1982), the Court is of the opinion that the impact of the *Mitchell* suit on Plaintiff's claim against the employer should not be given retroactive effect. Thus, for the reasons stated above Plaintiff's claims are not time barred.

### III. EXHAUSTION OF INTERNAL REMEDIES

■ The union moves for summary judgment on the basis that Plaintiff has failed to exhaust union remedies which were available to him by virtue of the union's bylaws and constitution. In particular, the union contends that Plaintiff filed his intra-union charges on March 11, 1980. The immediate action was filed on June 20th, 1980, less than four months after the union con-

tends Plaintiff attempted to gain internal review by the union. Plaintiff, to the contrary, contends that he instituted internal review proceedings as early as December 27th, 1979. The resolution of this conflict is dependent upon an interpretation of a letter sent from Plaintiff to Charles Haddock, Secretary to the Executive Board of Teamsters Joint Council 80. A review of exhibits A E to the Haddock affidavit reveals that Plaintiff invoked the internal union process as of the date of the December 27, 1979 letter. The exhaustion of intra-union remedies doctrine is not a hard and fast rule. "Courts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton v. International Union, Automobile, Aerospace, & Agricultural Implement Workers of America,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). To conclude the McFarland failed to invoke the process with his letter dated December 27, 1979 for the reasons claimed by the union would effectuate a promotion of form over substance. Accordingly, the Defendant union has failed to demonstrate the Plaintiff's claim is barred by the exhaustion doctrine.

### IV. THE UNION'S REPRESENTATION OF PLAINTIFF

As noted above, both Defendants move for summary judgment on grounds that the union's representation of Plaintiff was not a breach of its statutory duty as a matter of law. In order to prevail on his claim, Plaintiff must show that the conduct of the union in its representation of Plaintiff was arbitrary, discriminatory, or in bad faith. *Freeman v. O'Neal,* 609 F.2d 1123, 1125 (5th Cir. 1980). There is no evidence in the record which tends to show that the union was discriminatory in the processing of Plaintiff's grievance and neither is there any evidence of bad faith.[6] Accordingly, Plaintiff's claim must rest on a showing that the union's representation of Plaintiff was arbitrary or perfunctory.

---

**6.** Plaintiff admits in his deposition that there existed no hostility or animosity between him and any union official. Further, there is no evidence that shows that Plaintiff was treated

any differently that any other member by the union. *See Turner v. Air Transport Dispatcher Association,* 468 F.2d 297, 301 (5th Cir. 1972).

Viewing the summary judgment evidence in the light most favorable to Plaintiff, the pertinent facts are as follows. On the date of his discharge, Plaintiff had been employed as a truck driver for Consolidated Freightways Corporation for nearly 27 years. Plaintiff is and was a member in good standing of the Teamsters Union, Local 745, at all times material to this action. At all times material to this suit, Plaintiff's employment rights and responsibilities were subject to the provisions of a collective bargaining agreement entitled "Southern Conference Area Local Freight Forwarding Pickup and Delivery Supplemental Agreement." In all respects material to this action, the enforcement of Plaintiff's employment rights under said collective bargaining agreement was the duty and responsibility of the Defendant Teamsters Local 745.

On June 30th, 1978, while on his regular "run" from Dallas to Fort Worth, Plaintiff's company vehicle struck a vehicle parked in the right lane on a bridge on the Dallas-Fort Worth Turnpike. The owner of the parked vehicle died in the accident. By letter dated July 6th, 1978, Consolidated Freightways discharged Plaintiff for alleged "recklessness resulting in a serious accident while on duty."

After receiving his discharge letter Plaintiff, on June 10th, 1978, went to the union hall and spoke with Allen Stanford, assistant business agent of Local 745. Since the date of the accident Plaintiff had received no communication from the union although the union had known since July 5th, 1978 that the company had determined to discharge Plaintiff. Further, Stanford knew as early as July 3rd, 1978 that the company was debating whether to discharge Plaintiff. During the ten days between the accident and the day the Plaintiff took his discharge letter to the union, Plaintiff was at home in bed recuperating from his injuries incurred in the accident.

At this first meeting with his union representative, Plaintiff requested the union's help in fighting his discharge. Plaintiff requested that a meeting be arranged between himself, the union representative Stanford, and a company representative. Stanford told Plaintiff that all Plaintiff could do was file a grievance. Plaintiff was not informed of any prior meetings or discussions between union and company representatives. Plaintiff discussed the accident with Stanford and wrote his grievance on a form provided by Stanford.

Unbeknownst to Plaintiff, Stanford turned the case over to one George Prda, also an assistant business agent, sometime during the week of July 3, 1978. Prda never spoke to Plaintiff prior to the grievance hearing before the Southern Multi-State Grievance Committee. Plaintiff was never informed that Prda rather than Stanford would be representing him at the grievance hearing.

The union's investigation of the accident consisted of the following. Stanford, the week following the accident, viewed the scene of the accident and three times examined the damaged tractor which Plaintiff had been driving. Stanford had several discussions with company representatives during this week and was informed that company would not reconsider its decision to discharge McFarland. In addition to viewing the accident scene and the tractor, Stanford read a copy of the police accident report provided by the company. The union did not at any time attempt to talk with the investigating officer, nor any witnesses, nor Plaintiff's attorney Jack Frieze, who had advised Plaintiff not to take an alcohol test at the hospital shortly after the accident. Further, although the union was aware of evidence in the hands of the company that conflicted with Plaintiff's recollection of the incident in his grievance, the union never revealed this evidence to the Plaintiff or otherwise sought his explanation of the conflict. The union felt that the conflict was very damaging to Plaintiff's case.

Following his meeting with Stanford, Plaintiff received a letter from the union dated July 20, 1978 notifying Plaintiff that his grievance was scheduled to be heard at the grievance session commencing 11 days

from then in Biloxi, Mississippi. The letter stated that it "is impossible for us to tell you the exact time or day when your case will be heard." Upon receipt of this letter Plaintiff went to the union hall to tell Stanford that he was scheduled for an operation on his elbow and that he would not be able to attend the grievance hearing. Plaintiff asked Stanford if it would be possible to have the hearing postponed. Stanford responded that "there is nothing to it" and that he, Stanford would be there. Plaintiff, as a result of Stanford's statement, made no subsequent request for postponement.

Stanford knew that Plaintiff was not planning to be in attendance at the grievance hearing, and was not surprised to later hear that Plaintiff had not appeared at the hearing. The union made no attempt to postpone the hearing. At the hearing on Plaintiff's grievance in Biloxi, the sum total of Local 745's representation of George McFarland reads as follows:

"This is George Prda with Local Union 745. I'd like to read a letter into the record. It's dated 7/20/78, addressed to Mr. George C. McFarland, 1814 Huntington, Dallas, Texas 75203. 'The grievance you filed against your company are scheduled to be heard at the next meeting of the Southern Multi-State Grievance Committee. This grievance session commences on Monday, July 21, 1978, at 9:00 a. m. at the Ramada Inn at Biloxi, Mississippi. It is impossible for us to tell you the exact time or date [sic] when your case will be heard. Fraternally yours, Teamsters Local Union 745.' Signed by Charles E. Haddock, Secretary-Treasurer and Business Manager. Mr. McFarland has been notified that the Grievance Committee is meeting this week. He's been paged and didn't respond to the page and [I'll] read the grievance into the record. [whereupon Mr. Prda reads plaintiff's own handwritten one-page grievance; and continues] That was Mr. McFarland's grievance and in behalf of Mr. McFarland I would like to say that he has better than 20 years seniority with CF and apparently is in his fifties and we are asking that he be reinstated as he asks in his grievance...

... I can't answer that question ...

... When they beat me up they throw'd my butt in jail ...

... Yeah, but they charge them with being guilty ...

... Issued my ass, you go to jail ...

... No, they'll file charges on you as a DWI, then you have to appear in court...

... Not that I know of..."

In his deposition Plaintiff acknowledges that he informed Stanford of all of the facts he knew about his case prior to the grievance hearing. He further acknowledges that all of these facts were presented to the Committee through the reading of his grievance. His complaints regarding the union's representation are as follows:

1. that Prda handled the hearing and not Stanford;

2. that he was not notified of, or personally present at meetings held between company and union representatives prior to the submission of the grievance to the arbitration committee;

3. that Prda failed to view the scene of the accident;

4. that he was not promptly provided with a transcript of the arbitration committee proceeding;

5. that the union conducted a limited investigation into the accident prior to the grievance hearing;

6. that the union sought no postponement of the grievance hearing after being informed by Plaintiff that he could not attend;

7. that Prda failed to explain McFarland's absence at the hearing and presented essentially no evidence or argument other than reading Plaintiff's handwritten grievance;

8. that Prda conducted himself in a disgraceful and flippant manner before the arbitration committee.

The Court is satisfied that numbers 1 5 above fail to show a breach of the union's duty. With respect to number one,

there is additional undisputed summary judgment evidence which shows that the decision to turn the case over to Prda is consistent with the union's representative duty. Stanford testified that the union has approximately fourteen business representatives who are individually assigned to the specific companies with which Local 745 has a contract. Those contracts involve many freight companies whose cases are submitted to the Southern Multi-State Grievance Committee. The union has a standard practice of not sending all of its business representatives to these hearings because otherwise the union would be unable to carry on its business in their absence. Thus, the union rotates the business representatives with respect to the presentation of grievances. A business representative whose turn it is to attend that grievance committee therefore presents grievances which do not necessarily arise out of the specific company to which he is normally assigned. Under these circumstances, it is clear that the union had a rational basis for assigning Plaintiff's grievance to Prda. Simply stated, Plaintiff has no right to the representative of his choice, provided the union's choice of representatives is not otherwise a breach of its duty. *See Wells v. Southern Airways, Inc.*, 616 F.2d 107, 110 (5th Cir. 1980).

Plaintiff's second contention concerns his limited input into pre-arbitration discussions between the union and the company. It is well-established that "[i]t is not essential that the grievant be present when the union decides whether to pursue the grievance," *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1127 (5th Cir. 1980), and neither is the grievant entitled to be present at informal negotiations between the union and the company.

Plaintiff's third contention is also easily disposed of. Although there is no evidence that Prda viewed the scene of the accident, it is undisputed that Stanford did. Stanford also inspected the vehicle in question several times and reviewed the accident reports. The results of his investigation were related to Prda. From this evi-

dence, the Court cannot conclude that Prda's failure to view the accident scene was arbitrary or perfunctory. Accordingly, Plaintiff's third contention is also without merit.

By his fourth contention, Plaintiff claims that the union breached its duty in its delay in providing him a copy of the transcript of proceedings before the Southern Multi-State Grievance Committee. The evidence is undisputed that Plaintiff attempted to obtain a copy through the union, there was some delay in obtaining a copy, and the Plaintiff had to pay for it. These allegations fail to state a claim for breach of duty of fair representation. *Grovner v. Georgia Pacific Corporation*, 625 F.2d 1289, 1290 (5th Cir. 1980). Further, the Court notes that the arbitration committee did not direct the submission of post-hearing briefs and therefore, the lack of a transcript of proceedings was immaterial.

Plaintiff assails the union's pre-arbitration investigation into merits of his grievance. The evidence shows that Stanford viewed the scene of the accident, the vehicle which Plaintiff was driving, accident reports made by public officials and witnesses, and Plaintiff's version of the accident. Plaintiff can only point to the union's failure to interview Plaintiff's attorney who had advised Plaintiff not to take an alcohol test while Plaintiff was detained in the hospital. Plaintiff also contends that the union *should* have interviewed the investigating police officer, although the union did in fact review that officer's written statement. These criticisms of the union's investigation into McFarland's grievance fail to rise to the level of a breach of the union's duty. Plaintiff merely is dissatisfied with the results of arbitration and, in retrospect, contends that the union could have done more. The conclusion, however, must be that the evidence shows the conduct of the union was not arbitrary or perfunctory. Stanford's investigation of the incident, as well as his discussions with company officials, satisfied the union's duty. Plaintiff's disagreement with the union's investigatory tactics fails to state a

claim for breach of the union's duty. *Vaca v. Sipes*, 386 U.S. 171, 192–93, 87 S.Ct. 903, 917–18, 17 L.Ed.2d 843 (1967). In connection with the union's investigation of Plaintiff's version of the incident, Plaintiff contends that the conflicting evidence could have been explained, given the opportunity. While a confrontation with Plaintiff concerning this conflicting evidence in the hands of the company may have been wise, it simply does not rise to the level of arbitrary conduct. Plaintiff once again, is merely seeking to challenge the union's strategy in the presentation and investigation of the grievance.

■ With respect to Plaintiff's final three contentions, the Court is of the opinion that there remain questions of fact that preclude summary judgment. The respective versions of the facts concerning notice and the opportunity of Plaintiff to appear at the grievance hearing are in conflict. Further, it is undisputed that Plaintiff's absence from the hearing was not explained to the arbitration committee. Finally, while the statements of Prda at the hearing are part of the record, the remainder of the proceedings are not. Accordingly, the Court is of the opinion that a finding that the union was arbitrary or perfunctory in the presentation of Plaintiff's grievance is not foreclosed by the summary judgment evidence.

## V. CONCLUSION

The immediate action against the employer and the union is not barred by limitations. Plaintiff's claim against the union is governed by Texas' two-year tort statute of limitations. The action against the company is governed by Texas' 90 day statute of limitations for actions to vacate arbitration awards. The Court, however, will not apply the 90 day limitation retroactively.

This action is not barred by Plaintiff's failure to exhaust his intra-union remedies. Further, although the summary judgment evidence shows that some of Plaintiff's contentions regarding the union's conduct in the processing of his grievance are without merit, there are still questions of fact which must be resolved at trial. Accordingly, and in light of the foregoing,

It is ORDERED that the supplemental motions of both Defendants for summary judgment are DENIED;

It is FURTHER ORDERED that the motions of both Defendants for summary judgment are granted in part and denied in part as set forth above;

It is FURTHER ORDERED that this action is reset for trial on the Court's August 2nd docket; all discovery is to be completed no later than June 18th, 1982, and all motions are to be submitted no later than July 2nd, 1982.