842 F.2d 633
 128 L.R.R.M. (BNA) 2264, 108 Lab.Cas. P 10,398
 Howard T. WOZNIAK, Plaintiff-Appellant,
v.
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA-UAW, LOCAL 897;
International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America--UAW; Ford Motor
Company, Metal Stamping Division-Buffalo Stamping Plant, Defendants,
International Union, UAW Local 897; International Union,
UAW; and Ford Motor Company, Metal Stamping
Division-Buffalo, Defendants-Appellees.
 No. 303, Docket 87-7520.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 23, 1987.
Decided March 21, 1988.
 
 Michael B. Bluth, Dunkirk, N.Y., for plaintiff-appellant.
 John A. Fillion, Buffalo, N.Y. (Wyssling, Schwan & Montgomery and W. James Schwan, Buffalo, N.Y., of counsel), for defendants-appellees UAW, Local 897 and Intern. UAW.
 Phillips, Lytle, Hitchcock, Blaine & Huber, and Michael R. Moravec, Buffalo, N.Y., of counsel, for defendant-appellee Ford Motor Co.
 Before VAN GRAAFEILAND, WINTER and MAHONEY, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 On August 26, 1985, Howard Wozniak brought this action in the United States District Court for the Western District of New York against Ford Motor Company, his former employer, and International Union, United Automobile Aerospace and Agricultural Implement Workers (UAW) and its Local 897, his union representatives. He alleged that Ford had wrongfully discharged him and that the unions had breached their duties of fair representation in challenging the discharge. (29 U.S.C. Sec. 185). On May 21, 1987, Chief Judge Curtin directed entry of judgment dismissing the complaint on the ground that it was time barred. We affirm, although, as we are permitted, Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937), we do so on grounds different than those relied on below.
 
 
 2
 Article VII of the 1982 Collective Bargaining Agreement between Ford and the UAW describes the procedure to be followed in the handling of grievances. Disciplinary grievances are heard first at a Unit Grievance Meeting attended by not more than four Company and not more than four Union representatives. If the grievance is not disposed of satisfactorily at this stage, the matter is appealed to the Plant Review Board, which, in a single plant area as here, consists of two persons representing the Union and two persons representing the Company. "The Union representatives shall be an International Representative designated by the Regional Director of the area, who shall be the ranking Union representative, and the Chairman of the Unit." The agreement also provides that the designated representative of the Regional Director "shall have the power to settle or withdraw on behalf of the Union any case or cases appealed to [t]his level of the procedure, either before or after ... disposition by the Company is received, that in his judgment does not merit appeal to the next step," i.e., to an impartial Umpire.
 
 
 3
 On April 19, 1984, Wozniak was discharged because he brought a loaded pistol onto the plant premises in violation of an established Company rule. His grievance, directed primarily at the severity of his penalty, was rejected following hearings before both the Unit Grievance Meeting and the Plant Review Board. Thereafter, Bill Smigelski, the representative of the Regional Director, decided that the grievance did not merit further review, and withdrew it.
 
 
 4
 The UAW Constitution provides that any challenges to the act of a Regional Director shall be made first to the International Executive Board and then to either the Convention Appeals Committee or the Public Review Board. The appeal to the Executive Board must be by a specific, detailed and complete writing signed by the member. It must be taken within thirty days "from the time the appellant first becomes aware, or reasonably should have become aware, of the alleged action or decision appealed." The Constitution also provides that it shall be the duty of every member to exhaust the remedies prescribed therein before going to court for redress.
 
 
 5
 Wozniak was informed of the withdrawal of his grievance by a certified letter dated September 6, 1984, from Nicholas LaRosa, the President of his Local. Instead of appealing Smigelski's decision to the International Executive Board within thirty days, as the Union Constitution required, Wozniak sought relief from his Local, number 897. On September 26, 1984, he wrote to the Recording Secretary of Local 897 asking that the Local's members overrule the decision to withdraw his grievance. On October 14, 1984, the members voted in favor of reactivating Wozniak's grievance.
 
 
 6
 When Smigelski learned what Wozniak had done, he wrote Wozniak on October 19, 1984, informing Wozniak that he was following the improper appellate procedure. Smigelski stated that it was he, Smigelski, who decided to withdraw Wozniak's grievance; he referred Wozniak to the section of the Constitution above described, which provides for appeals to be taken to the International Executive Board. Smigelski concluded his letter by advising Wozniak that he had the right to reappeal his case under the proper procedure.
 
 
 7
 Wozniak failed to heed Smigelski's advice and appeal to the Board. Instead, his attorney wrote Smigelski stating in substance that, because the September 6 letter came from LaRosa, Wozniak assumed that the appeal should be taken to the Local. The attorney then simply suggested that Smigelski review the minutes of the Local's membership meeting.
 
 
 8
 It was not until March 13, 1985, that Wozniak's attorney wrote to the International Executive Board requesting that his client's grievance be reinstated and set down for arbitration. In response to this letter, the Administrative Assistant to the UAW President wrote Wozniak informing him of the above-described constitutional requirements that appeals to the Executive Board must be in a writing signed by the member and must be made within thirty days of awareness or imputed awareness of the decision appealed from. After stating that appeals must be initiated and pursued in this manner in order to be considered as timely, the letter continued:
 
 
 9
 In view of the foregoing, it is patently obvious, and there is no contrariwise opinion evinced in the enclosed letter referenced herein, that an official and timely appeal of the issue in controversy has been registered with the International Union, UAW Executive Board.
 
 
 10
 Because the constitutional requirements for an appeal had not been met, it is clear that the above-quoted sentence did not say what the Administrative Assistant intended it to say and that a mistake in the transcription had somehow gotten by him. Viewed in its entirety, this letter cannot be construed as a waiver of Wozniak's failure to satisfy the constitutional requirements of a timely appeal.
 
 
 11
 The district court held that appellant's action was barred by the six-month limitation period prescribed in section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b), and held applicable in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 169-72, 103 S.Ct. 2281, 2293-95, 76 L.Ed.2d 476 (1983), to hybrid section 301/fair representation claims, the type of claim made in the instant case. The issue of timeliness need not be reached, however, if appellant had no right at all to sue. In Clayton v. Automobile Workers, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the Court held that despite the presence of a clause in the Union Constitution requiring exhaustion of internal appeals before judicial relief is sought, exhaustion will not be required if it cannot result in reactivation of the employee's grievance or an award of the complete relief sought. Id. at 685, 101 S.Ct. at 2093. Although the UAW alleged as an affirmative defense in the instant case that Wozniak had failed to exhaust his internal union appeal procedures, the adequacy vel non of those procedures was not discussed in the summary judgment motion papers. However, at oral argument, the attorneys for the Union and Ford informed this Court that, if the International Executive Board requested that Wozniak's grievance be reactivated, Ford would be required to grant the request. This being so, absent a showing that the Union acted in bad faith when it withdrew Wozniak's grievance, Wozniak was required to exhaust his internal union remedies before suing.
 
 
 12
 Our holding in Santos v. District Council, 619 F.2d 963 (2d Cir.1980), upon which the district court relied in finding Wozniak's action to be time barred, is not to the contrary. Santos involved a jurisdictional dispute between two unions and an attempt to enforce an arbitration award by members of the successful union. Both unions were members of the AFL-CIO, whose constitution required internal settlement of the dispute and forbade resort to the courts. On the first appeal to this Court, we reversed the grant of summary judgment in favor of the defendant union because of serious allegations, substantially unchallenged, that officials of plaintiffs' own union had failed to exercise "complete good faith and honesty of purpose" in seeking appropriate sanctions against the defaulting union and the defaulting union therefore was precluded from relying on the exclusive remedy provisions of the union contract. Santos v. District Council, 547 F.2d 197, 202-04 (2d Cir.1977). When the case came before us the second time, we began our consideration of the statute of limitations defense with the proposition already established that suit could be brought "if it were proven, as alleged in the complaint, that there had been a breach of the duty of fair representation." 619 F.2d at 968-69. We held that a cause of action did not exist unless a duty of fair representation had been breached and that, if such breach occurred, plaintiff's cause of action accrued no later than when plaintiff knew or reasonably should have known of its existence. Id.
 
 
 13
 In the instant case, appellees' motion for summary judgment was supported by affidavits from both Smigelski and LaRosa, which completely supported the Union's claim that Wozniak's grievance was withdrawn in good faith. After pointing out all the steps the Union had taken on Wozniak's behalf, Smigelski, who had a personal interest in the case because of his long-time friendship with Wozniak's father, said:
 
 
 14
 Your deponent's decision to withdraw the plaintiff's grievance from the grievance procedure following the company's third step grievance answer was made in good faith following a full and complete investigation by union representatives. Amongst the things considered were the following facts: (1) the plaintiff admittedly had a loaded firearm on company property, (2) the company has for years had a posted work rule, posted in various areas of the plant facility absolutely prohibiting the possession of any weapon on company property, (3) the subject posted work rule calls for discharge for any infraction thereof, (4) the plaintiff or his private representative gave conflicting explanations for why the gun was on company premises, (5) there was evidence that the plaintiff was informed prior to the incident that resulted in discharge that he could be terminated if caught with the gun, (6) common sense dictates that possession of a loaded weapon is not permitted in an industrial plant, and (7) the company had the facts and witnesses to prove the essential elements of the case.
 
 
 15
 LaRosa's affidavit was in complete accord. Wozniak's responding affidavit did not contradict the sworn statements of Smigelski and LaRosa in any way. Allegations in Wozniak's unverified complaint asserting arbitrary, discriminatory and bad faith conduct did not suffice to create a triable issue. Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir.1986); Fed.R.Civ.P. 56(e). Indeed, in view of Wozniak's obviously improper conduct in bringing a loaded gun into his employer's factory, it is difficult to conceive of the Union doing anything other than what it did. There is no arbitrariness in failing to process a bad case. Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1214-15 (9th Cir.1980). We are satisfied that Smigelski's withdrawal of Wozniak's grievance gave Wozniak no right to sue either Ford or the Union. This does not mean, however, that Wozniak could not have appealed Smigelski's decision to the International Executive Board, which could have asked for reactivation of his grievance. His failure to exhaust his internal union remedies in this fashion precluded him from bringing this suit.
 
 
 16
 Wozniak did not show that the Union unfairly misled him concerning the proper procedures for pursuing his Union remedies, and the district court so found. Wozniak was represented by an attorney who had the necessary training to read and understand the Union Constitution. See Monroe v. International Union, UAW, 723 F.2d 22, 26 (6th Cir.1983); Miller v. General Motors Corp., 675 F.2d 146, 150 (7th Cir.1982); Newgent v. Modine Mfg. Co., 495 F.2d 919, 927-28 (7th Cir.1974). Moreover, Smigelski gave Wozniak and his attorney notice of the proper appellate procedures to follow. Wozniak was obligated to exhaust his internal union remedies unless he showed that the Union had acted in bad faith or in an arbitrary or discriminatory manner or that such internal procedures would have been futile. Monroe v. International Union, UAW, supra, 723 F.2d at 24-26. Because he failed to do this, he had no right to sue. Accordingly, we affirm.