**Barry D. KEIPER,**

v.

**UNITED AUTOMOBILE WORKERS' UNION, LOCAL 677 and Mack Trucks, Inc.**

No. 92–7087.

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1994.

Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, for plaintiff.

William T. Josem, Cleary & Josem, Philadelphia, PA, for United Auto. Workers' Union, Local 677.

Anthony B. Haller, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Mack Trucks, Inc.

## MEMORANDUM

CAHN, Chief Judge.

Plaintiff Barry D. Keiper ("Keiper" or "plaintiff") brought this action against Mack Trucks, Inc. ("Mack"), his previous employer, and the United Automobile Workers' Union, Local 677 ("Local 677") (collectively the "defendants"). Keiper claims that Mack breached its contract (the "Master Agreement") with Local 677. Keiper also alleges that Local 677 violated his rights under Section 301 of the Labor–Management Relations Act of 1947 ("Section 301"), 29 U.S.C. § 185, by breaching its duty of fair representation. Currently before the court are defendants' motions for summary judgment.

Jurisdiction is based on 28 U.S.C. § 1331 and 29 U.S.C. § 185. For the reasons below, defendants' motions will be granted.

### I. Facts

On January 24, 1978, Keiper began working for Mack as a member of Local 677. Shortly thereafter, Keiper's right hand was injured by one of Mack's machines and three of his fingers were crushed.

Pursuant to Article X of the Master Agreement which existed between Local 677 and Mack at the time ("Article X"), an employee who lost the use of three fingers on either hand was provided "super seniority" status. Super seniority status effectively prevented the layoff of any qualified employee. Keiper was acknowledged to have an injury which satisfied Article X, and for over 14 years he received the benefits of super seniority.

In the summer of 1992, Keiper vocally disagreed with Local 677 and Mack's agree- ment to impose mandatory overtime on Mack's union employees. Immediately thereafter, Local 677 suggested to Mack that Keiper no longer deserved super seniority status. Local 677 explained that Keiper did not have the requisite loss of use under Article X because he did not have a 100 percent loss of use of his three injured fingers. In July, 1992, Keiper lost his super seniority status, and on July 17, 1992, Keiper was laid off.

Keiper initiated grievances against Mack regarding the loss of his super seniority status. Keiper claimed that his termination violated Article X, and was in retaliation for his opposition to the mandatory overtime agreement reached by Local 677 and Mack. The Shop Committee of Local 677 ("Shop Committee"), however, refused to pursue Keiper's grievances against Mack.

On August 27, 1992, Keiper wrote a letter to Local 677 seeking to institute "intra-union grievance proceedings in accordance with our constitution and by laws" in order to challenge the Shop Committee's decision not to pursue Keiper's grievance. In this letter, Keiper asked for information regarding the proper procedures to follow when instituting such proceedings.

On September 9, 1992, Carl Breininger ("Breininger"), Vice President of Local 677, replied in writing to Keiper's request. Breininger informed Keiper that the procedures for challenging union activity were set out in Article 31 and Article 33 ("Article 33") of the United Automobile Workers' Union ("UAW") constitution ("constitution"), and Articles 18 and 19 of Local 677's by-laws.[1] Breininger also provided Keiper with a copy of the constitution and by-laws.

Keiper appealed the Shop Committee's decision to the Local 677 membership working at Mack. The membership denied his appeal. On November 12, 1992, Keiper appealed the membership's decision to Local 677's Executive Board. This appeal stated in part: "[A]ccording to our constitution, I am asking that the appeal be brought before the next local union Executive Board Meeting ..." Local 677's Executive Board considered Keiper's appeal and denied it on April 6, 1993.

On April 12, 1993, Keiper appealed to the International Executive Board of the UAW. In this appeal, Keiper stated that he was "attempting to follow through on intra-union grievance procedure." The International Executive Board assigned Keiper's case to an Appeals Committee for resolution, and on October 12, 1993, the Appeals Committee held a hearing at Local 677's union hall in Allentown, Pa. On March 9, 1994, Keiper was notified that the Appeals Committee had denied his appeal. This notification did not inform Keiper that he had any further avenues of appeal.

On June 13, 1994, Keiper wrote a letter to Owen Bieber ("Bieber"), President of UAW, requesting information regarding the procedure for appealing the Appeals Committee's decision to UAW's Public Review Board ("PRB"). In this letter, Keiper stated that he had not received a copy of the constitution until June 8, 1994, and had not learned that he could appeal the Appeals Committee's decision until May 31, 1994.

On June 20, 1994, Bieber responded to Keiper's letter. Bieber noted that Keiper had received a copy of the constitution on September 9, 1992, and had received the Appeals Committee's decision on March 9, 1994. Bieber also wrote that under Article 33, Section 4(c) of the constitution Keiper's appeal to the PRB was untimely.[2]

---

**1.** Article 33 sets forth detailed procedures for appealing the actions or decisions made by local unions. Article 33 provides that a member seeking review of a decision or action by his or her local union should first appeal to the membership of the local. If unsuccessful in that appeal, the member may appeal to the Executive Board. If unsuccessful before the Executive Board, a UAW member may further appeal, either to the Constitutional Convention Appeals Committee or

to the Public Review Board. (*See* UAW Constitution, Article 33, Section 2(a).)

**2.** Article 33, Section 4(c) of the constitution, entitled "Time Limits for Appeals", provides:

To be considered, an appeal must comply with these time limits, if no other time limit is specifically set forth in the Constitution: Appeal to Local Union sixty (60) days; Amalgamated Local Union Appeal to unit, sixty (60)

Keiper filed suit against Mack and Local 677 on December 10, 1992. The case was stayed pending Keiper's exhaustion of UAW's internal remedies. *See* Order (November 22, 1993). Relying on Keiper's failure to proceed entirely through UAW's internal appeals process, defendants have now moved for summary judgment.

## II. Summary Judgment Standard

The Federal Rules of Civil Procedure provide that summary judgment is appropriate if "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Then the non-moving party must "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992). The "nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." *Pastore v. Bell Telephone Co.*, 24 F.3d 508, 511 (3d Cir.1994)

When considering a motion for summary judgment, "inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.* at 512. The court may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the record thus construed could not lead the trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. Discussion

In *Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the Supreme Court addressed the issue of when a union member must exhaust internal union procedures prior to filing suit under Section 301. The Court stated that lower courts have discretion to decide when exhaustion is required, but that this discretion should be guided by three relevant factors:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under Section 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Id.* at 689, 101 S.Ct. at 2095. The Court stated that where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, "exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes." *Id.* at 692, 101 S.Ct. at 2097.

The United States Court of Appeals for the Third Circuit has directed lower courts to look to the "reasonableness" of a particular union procedure when deciding whether exhaustion is required, and has rejected the "rigid approach" which other courts have used when determining exhaustion issues. *See Local Union No. 1075, United Rubber, Cork, Linoleum and Plastic Workers of America v. United Rubber, Cork, Linoleum, and Plastic Workers of America*, 716 F.2d 182, 186 (3d Cir.1983). In addition, the Court of Appeals has held that a lower court's discretion whether to require exhaustion is not limited to *Clayton's* three factors. *Id.* at 186. For example, another factor to

days, appeal from unit to Amalgamated Local Union itself, thirty (30) days; appeal to other subordinate body sixty (60) days; appeal to International Executive Board appellate or

original cases, thirty (30) days; appeal to Convention Appeals Committee thirty (30) days; appeal to Public Review Board thirty (30) days.

be considered is whether a provision in the union's constitution clearly directs a union member to an established internal mechanism. *Id.*[3]

■ In the present case, Keiper claims that exhaustion of UAW's internal procedures should not be required because the PRB is unable to provide Keiper with the relief which he seeks. Specifically, Keiper claims that because the PRB lacks the power to reinstate Keiper to his job, his failure to appeal to the PRB should be excused. The court disagrees.

■ The Supreme Court has held that where internal union procedures can result in the reactivation of a union member's grievance, "exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes." *Clayton,* 451 U.S. at 692, 101 S.Ct. at 2097. The Court wrote that "in such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum." *Id.* Therefore, where reactivation is possible, a union member should be "required to submit his claim to the collectively bargained dispute resolution procedures." *Id.*

Under the controlling Master Agreement between Local 677 and Mack, the PRB clearly has the power to reactivate Keiper's grievance. Article V, Section 19 of the Master Agreement provides in pertinent part:

[I]n those instances where the UAW's International Executive Board, Public Review Board, or Constitutional Convention Appeals Committee have reviewed a grievance disposition and found that such disposition was improperly concluded by the Union body or representative involved, the Mack Trucks Department may so inform the Director of Employee Relations and Benefits Administration of the Company and request in writing that such grievance be reinstated in the parties' grievance procedure at the same level at which it was originally settled. After receipt of such written request, the grievance will be so reinstated by the Company.

Although the PRB independently does not have the power to reinstate Keiper to his job, it does have the power to reinstate Keiper's grievance. Therefore, under *Clayton,* exhaustion is required. *See Wozniak v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* 842 F.2d 633, 635 (2d Cir.1988) (where employer is contractually obligated to grant union's request to reactivate employee's grievance, exhaustion of internal union remedies is required). *Accord Fajardo v. Foodtown Supermarkets,* 702 F.Supp. 502, 508 (D.N.J.1988); *Faust v. RCA Corporation,* 657 F.Supp. 614, 619 (M.D.Pa.1986). *Nanney v. Chrysler Corporation,* 600 F.Supp. 1248, 1452–1453 (D.Del.1984).[4]

■ Keiper also claims that exhaustion of the UAW's internal remedies should not be

---

**3.** Keiper does not dispute that the constitution requires UAW members to exhaust internal union remedies. Section Five of Article 33, entitled "Obligation to Exhaust Internal Union Remedies", provides:

It shall be the duty of any individual or body, if aggrieved by any action, decision, or penalty imposed, to exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of the Union before going to a civil court or governmental agency for redress.

**4.** In his Brief in Opposition to Defendants' Motion for Summary Judgment, Keiper argues that "numerous courts have found that because a union cannot unilaterally grant reinstatement, internal union procedures cannot provide a full remedy for an individual who seeks reinstatement." In support of this argument, Keiper relies on two cases: *Tamari v. Conrad,* 552 F.2d

778 (7th Cir.1977), and *Krecun v. Bakery, Cracker, Pie, Yeast Drivers and Miscellaneous Workers Union,* 586 F.Supp. 545 (N.D.Ill.1984).

In *Tamari,* customers of a brokerage house sued the arbitrators who were to decide a dispute between the plaintiffs and the brokerage house. The plaintiffs claimed that the arbitrators lacked the authority to hear the dispute. The court held that the arbitrators were immune from suit with respect to questions involving their authority to resolve a dispute. This court is unable to determine how *Tamari* is relevant to the present litigation.

*Krecun* is similarly distinguishable. In *Krecun,* the court held that exhaustion was not required where the employee sought reinstatement. *Krecun,* 586 F.Supp. at 550. Unlike the present case, however, in *Krecun* there was no allegation that the union and employer had agreed to a reactivation of grievance clause.

required because it would be futile. Keiper appears to contend that because Local 677 initiated Keiper's firing, proceeding through UAW procedures would constitute a waste of time. Because Keiper has failed to present any evidence tending to show that the PRB would have unfairly handled his appeal, however, the court disagrees.

Keiper has failed to allege facts showing that appealing to the PRB could not have resulted in a proper disposition of his claim. For instance, Keiper has not offered any evidence demonstrating that the PRB's decision was already fixed. *Cf. Goclowski v. Penn Central Transportation Co.*, 571 F.2d 747, 758 (3d Cir.1977) (where union discloses that its position has become fixed, exhaustion of union appeals procedures is not necessary). Nor has Keiper presented evidence showing that the PRB is hostile towards him.[5] *See Hayes v. Brotherhood of Railway and Airline Clerks/Allied Services Division*, 734 F.2d 219 (5th Cir.1984) (to be excused from exhaustion requirement union member must show that persons who will hear his appeal will be hostile), *cert. denied*, 469 U.S. 935, 105 S.Ct. 336, 83 L.Ed.2d 272 (1984); *Dezura v. Firestone Tire & Rubber Company*, 470 F.Supp. 121, 124 (E.D.Pa.1979) (ani-

mus by local union cannot be imputed to the international union; to avoid exhaustion requirement, union member must show "direct evidence of hostility" by the international union), *aff'd*, 612 F.2d 571 (3d Cir.1979); *Pawlak v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local Union No. 764*, 444 F.Supp. 807, 811 (M.D.Pa.1977) (even though Local's officers rebuffed the union member, exhaustion not excused because "the larger organization itself was never itself given an opportunity to act"), *aff'd*, 571 F.2d 572 (3d Cir.1978). As noted above, the PRB has the power to provide Keiper with the complete relief he seeks. Therefore, absent evidence that the PRB would have unfairly addressed Keiper's claim, the court will respect the policies favoring exhaustion discussed in *Clayton*. Accordingly, the court holds that proceeding through the entirety of UAW procedures would not have been futile.

■ Keiper also argues that his good faith attempt to proceed through UAW's internal procedures satisfies the exhaustion requirement. In support of this argument, Keiper primarily relies upon *Ruzicka v. General Motors Corp.*, 523 F.2d 306 (6th Cir.1975).[6]

---

**5.** Article 32, Section 1, of the constitution provides in pertinent part:

> [T]here shall be established a Public Review Board consisting of impartial persons of good public repute not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies.

**6.** Keiper has also cited *United Steelworkers of America v. United Steelworkers of America*, 338 F.Supp. 1154 (W.D.Pa.1972), and *McFarland v. International Brotherhood of Teamsters*, 535 F.Supp. 970 (N.D.Tex.1982), to support his claim. While the courts in both of these cases held that the plaintiffs had exhausted the union's remedies, neither court relied upon the plaintiffs' good faith effort. Therefore, Keiper's reliance on these cases is misplaced.

In *United Steelworkers*, the court determined that although the union's internal procedures were ambiguous, the plaintiff appeared to have satisfied them. *United Steelworkers*, 338 F.Supp. at 1159–60. The court also seemed willing to dispense with the exhaustion requirement because proceeding through the union's internal procedures would have been futile. *Id.* at 1159. The court wrote:

> We think the evidence demonstrates that [the plaintiff] earnestly, if not artfully, attempted to pursue whatever internal union remedies were

ascertainably available to it, before it came to court. The procedures by which to invoke Article IV, apparently the relevant Article, are not spelled out in the Constitution. Absent determinable procedures, the plaintiff's letters to [a union official] and the "Grievance Report" filed with the [union] were surely sufficient to put the [union] on notice ... [T]he union, through its officials, effectively evaded and ignored the attempts of [the plaintiff] to invoke whatever internal remedial procedures were available to it. We conclude that the evidence adequately explains the failure of the plaintiff to exhaust available internal union remedies ...

*Id.* at 1160.

The *McFarland* court also did not address whether a union member's good faith attempt to proceed through union procedures satisfies the exhaustion requirement. Instead, the court merely held that a letter timely sent by the plaintiff to the union invoked the union's internal appeals process even though the letter did not comply with the union's formal requirements for instituting an appeal. *McFarland*, 535 F.Supp. at 974. In the present case, plaintiff failed to provide the union with any notice within the thirty day time period provided by Article 33, Section 4(c).

In *Ruzicka*, the court held that the union member had sufficiently exhausted his union's internal procedures despite the fact that he failed to proceed fully through the union's final stage of appeal. *Ruzicka*, 523 F.2d at 311–312. The court wrote that "federal policy requires staying the hand of judicial interference with the internal affairs of a labor organization until it has had 'at least some opportunity to resolve disputes concerning its own internal affairs.'" *Id.* at 311. (quoting *Brady v. Trans-World Airlines*, 401 F.2d 87, 104 (3d Cir.1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969)). The court then held that the plaintiff's "diligent processing of his complaint through 27 months of intra-Union proceedings is far more than 'at least some opportunity' for [the union] to resolve its dispute with him." *Id.*

Keiper has focused on the "at least some opportunity" language of *Ruzicka* to support his claim that he sufficiently exhausted the UAW's internal procedures. Because the court believes that the "at least some opportunity" language of *Ruzicka* is the improper standard for determining whether a union's internal procedures were exhausted, the court is not persuaded.

As an initial matter, the court notes that the plaintiff has failed to cite any case which relies on the "at least some opportunity" language of *Ruzicka* as the standard for evaluating exhaustion questions.[7] In addition, application of this standard would lead to the exact sort of judicial intrusion into the private resolution of disputes by labor unions which the Supreme Court counseled against in *Clayton*. For instance, use of this standard would require courts to decide whether particular union procedures provide the union with "some opportunity" to resolve disputes. Such a finding would also seem to allow union members to dispense with any appellate stages remaining after the union had such an opportunity. Needless to say,

this outcome is directly counter to the policy favoring "final resolution of the employee's contractual grievance through private rather than judicial avenues." *Clayton*, 451 U.S. at 692, 101 S.Ct. at 2097.

Furthermore, relevant precedent demonstrates that courts do not excuse deficiencies in exhaustion because of a plaintiff's good faith effort. For instance, in *Horton v. Caterpillar Inc.*, No. CIV.A.90–1287, 1991 U.S.Dist. LEXIS 9100 (C.D.Ill. June 17, 1991), *aff'd*, No. CIV.A.91–2724, 1992 WL 214437, 1992 U.S.App. LEXIS 22,203 (7th Cir. Sept. 8, 1992), the United States District Court for the Central District of Illinois was confronted with a case which is remarkably similar to the one at bar. In *Horton*, two UAW members, Horton and Schmidt, sought to challenge the UAW's failure to pursue their grievances against their employer. Because the *Horton* court's resolution of each plaintiff's claim is relevant to this discussion, the court will discuss the two *Horton* plaintiffs in turn.

The first plaintiff, Horton, was denied internal union review of his claim because he failed to appeal to the International Board in a timely manner. He then filed suit. The court granted summary judgment to the defendants on Horton's claim, explaining:

> Although further review within the Union is now unavailable to Horton, he has not properly exhausted his internal remedies. When a union member allows his internal appellate rights to lapse without seeking remedial action, he has failed to exhaust his union remedies. The policy favoring internal rather than judicial resolution of these disputes could only be advanced by such a rule. If the courts were to hold that the mere unavailability of further review within the union because of a failure to meet a filing deadline constitutes an exhaustion of internal remedies, the policy favoring internal resolution would evapo-

7. The court notes that district courts within the Sixth Circuit's jurisdiction do not follow Keiper's interpretation of *Ruzicka*. For instance, in *Findlay v. Jeep Corporation*, 117 L.R.R.M. (BNA) 2683 (N.D.Ohio 1983), the plaintiff's employer and the UAW moved for summary judgment on exhaustion grounds where the plaintiff failed to appeal to the UAW's PRB. Like Keiper, the plaintiff in

*Findlay* had properly proceeded through all of the UAW procedures except for the PRB. Although the court cited *Ruzicka*, it nevertheless found that the plaintiff's failure to appeal to the PRB was not justified, and accordingly granted summary judgment to the defendants. *Id.* at 2684.

rate. A union member wishing to have his claim heard in federal court rather than within the union would need only wait until his appeal rights had lapsed under the union constitution and then bring a cause of action in federal court.

*Horton,* 1991 U.S.Dist. LEXIS 9100, at \*19.

Schmidt, the second plaintiff in *Horton,* properly proceeded through the UAW's procedures but failed to appeal his case to the PRB. In granting summary judgment to the defendants on Schmidt's claim, the court wrote: "Quite simply, Schmidt declined for whatever reason to take his appeal to the Public Review Board. Having ignored this avenue for relief within the union, Schmidt cannot now seek relief from this court." *Id.* at \*21–22. *See also Findlay v. Jeep Corporation,* 117 L.R.R.M. (BNA) 2683 (N.D.Ohio 1983) (granting summary judgment to the defendants where the plaintiff failed to appeal to the UAW's PRB).

Similarly, in *Stevens v. Northwest Indiana District Council, United Brotherhood of Carpenters,* 20 F.3d 720 (7th Cir.1994), the court relied on *Clayton* in affirming the district court's grant of summary judgment to the defendants. The court explained:

> [E]xhaustion can never be completed because of the nature of the default; the thirty-day time for taking an appeal to the Executive Board has passed ... [F]oreclosure from a judicial remedy is the inevitable consequence of an unexcused and irremediable failure to exhaust. This result may seem harsh, but to allow union members to circumvent their union's grievance-filing timetable and proceed to court unobstructed by the default would drain the exhaustion requirement of its beneficial effects. So long as the timetable is reasonable, failure to adhere to it will typically be fatal.

*Id.* at 733 (citations omitted).

The court finds the reasoning of *Horton* and *Stevens* to be persuasive. The court also finds the time limitations provided by Article 33, Section 4, to be reasonable. *See Monroe v. International Union UAW,* 540 F.Supp. 249, 258 (S.D.Ohio 1982) (procedures under Article 33 of UAW constitution "have been haled by other Courts, and commentators, as being virtually unique in the American labor movement, in providing fair and rapid disposition of internal union appeals"), *aff'd,* 723 F.2d 22 (6th Cir.1983); *Battle v. Clark Equipment Co.,* 579 F.2d 1338, 1343 (7th Cir.1978) ("the general adequacy of the UAW's intra-union remedies has already been judicially recognized"). Accordingly, the court will not excuse Keiper's failure to timely appeal to the PRB on the grounds that he made a good faith effort.

■■■ Keiper's final argument is that his failure to timely appeal to the PRB should be excused because the UAW failed to inform him specifically that a final avenue of appeal was available. The court, however, holds that the UAW acted more than reasonably by forwarding a copy of the constitution to Keiper and by referring Keiper to the Articles relevant to his appeal. The court notes that even if the UAW had not referred Keiper to Article 33, he still would have been responsible for knowing the contents of the constitution. As the court in *Cliff v. International Union, United Automobile, Aerospace and Agricultural Implement,* No. CIV.A. 94–1635, 1994 WL 466643 (E.D.Pa. August 29, 1994), recently noted, "union members are obligated to be aware of the 'nature and availability of union remedies'." (quoting *Miller v. General Motors Corp.,* 675 F.2d 146, 149 (7th Cir.1982)). *See also Dezura,* 470 F.Supp. at 124 ("Ignorance ... is no excuse, for plaintiff had a duty to acquaint himself with the nature and availability of union remedies."); *Neipert v. Arthur G. McKee & Company,* 448 F.Supp. 206, 209 (E.D.Pa.1978) (ignorance of union's appellate procedures does not excuse exhaustion requirement); *Pawlak,* 444 F.Supp. at 811 (the mere fact that the plaintiff has "never been involved in or aware of the use of" the union's procedures can not catapult him over the exhaustion hurdle).

## IV. Conclusion

The court is loathe to dismiss cases merely because of a plaintiff's failure to comply with hyper-technical rules. This case, however, does not merely involve plaintiff's failure to comply with his union's time limitations. It

**306**

also implicates "that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over collective bargaining agreements." *Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095. This court therefore feels compelled to follow well-established precedent favoring the internal resolution of disputes by labor unions. This court has looked beyond *Clayton*'s three factors to determine whether Keiper had a sufficient reason for failing to exhaust the UAW's internal remedies, but has found none. Furthermore, this court has found Article 33's time limitations to be both unambiguous and reasonable. Accordingly, the defendant's motions for summary judgment will be granted.